# EXHIBIT I



Friday,
August 10, 2007

# Part IV

# Securities and Exchange Commission

17 CFR Parts 200, 230, and 239
Revisions of Limited Offering Exemptions in Regulation D; Proposed Rule

Federal Register/Vol. 72, No. 154/Friday, August 10, 2007/Proposed Rules	45133

current disqualifications not included in the proposed rule that we should include? Are any persons not covered who should be?

- What would be the effects on disqualified issuers? How many issuers would be affected?
- Unlike the Regulation A, Regulation E [159] and current Rule 505 disqualification provisions, proposed Rule 502(e) excludes selling broker-dealers, underwriters, and placement agents from the disqualification provisions. Should selling broker-dealers, underwriters, and placement agents be covered in the disqualification provisions? Would including selling broker-dealers, underwriters, and placement agents give issuers an incentive to check their backgrounds before engaging them for an offering? If they were included, should there be an exemption for persons who continue to be licensed or registered to conduct securities related business in the jurisdiction where the order, judgment, or decree creating the disqualification was entered, as is the case in the Model Accredited Investor Exemption?
- Does the proposed rule adequately cover the disqualification provisions of Regulation A, which currently apply to Rule 505? For example, proposed Rule 502(e)(1)(iii) would disqualify persons subject to an adjudication or determination by a federal or state regulator that the person violated securities or commodities laws or a law under which a business involving investments, insurance, banking, or finance is regulated. Under Rule 262(a)(5), a United States Postal Service false representation order and certain other orders and injunctions are specifically enumerated. Does the proposed rule adequately cover these and other related orders and injunctions? If not, should we revise the proposed rule to specifically cover United States Postal Service orders and injunctions or other specific circumstances?
- Should the disqualification provisions for being currently subject to an order, judgment, decree, or cease and desist order apply as long as the person is subject to the order, no matter when the order was entered into, or should the provisions apply only to orders entered into within the last five years, as proposed?
- The length of disqualification in the proposed rules generally is consistent with our current Rule 262 provisions in Regulation A. The proposal increases the length of disqualification for criminally convicted issuers from 5 years to 10 years. Under the Uniform Securities Act of 2002, a person convicted of a felony involving the business of securities is permanently barred from relying on the exemption. Should such felony convictions permanently disqualify a person? Is 10 years an appropriate disqualification period? Is 5 years an appropriate length of time to protect investors adequately from persons who have been determined to have violated or have been sanctioned for violations of securities-related and similar laws and regulations?

- How should the Commission phase in the new disqualification provisions, if adopted? Should we "grandfather" individuals and entities from the consequences of the new disqualification provisions if an issuer commences an offering before the effectiveness of proposed Rule 502(e)? With respect to offerings commenced before the effectiveness of proposed Rule 502(e), should we subject individuals and entities that become newly associated with the issuer after effectiveness to all the consequences of the new disqualification provisions? In these cases, should we provide any special waiver provisions and/or condition any waiver on providing disclosure in the offering document regarding any past disqualifying events?
- Would mandatory disclosure of the adverse orders, judgments, and determinations be an adequate substitute for disqualification? [160] If so, how should disclosure be mandated and enforced?
- The proposed rule provides an exemption from the disqualification provisions if, in the exercise of reasonable care, the issuer could not have known that a disqualification existed. Is this appropriate? If so, should an issuer be required to establish that reasonable care was based on a factual inquiry, as required in the Model Accredited Investor Exemption? Are there circumstances where no factual inquiry would be necessary? Would the requirement for a factual inquiry be burdensome?
- Should we revise the disqualification provisions in Regulation A and Regulation E to conform with proposed Rule 502(e)?

What changes specific to Regulation A or Regulation E should we make to the proposed disqualification provisions?

*D. Possible Revisions to Rule 504*

Rule 504 of Regulation D is known as the "seed capital" exemption. It is limited to offerings by non-reporting companies that do not exceed an aggregate annual amount of $1 million. Rule 504 places substantial reliance upon state securities laws, because the size and local nature of these offerings has not appeared to warrant imposing significant federal regulation.

Rule 504 sets forth the requirements for four separate exemptions from the registration requirements of the Securities Act. Among these is Rule 504(b)(1)(iii),[161] which provides an exemption from registration for offers and sales of securities that are conducted "according to state law exemptions from registration that permit general solicitation and general advertising so long as sales are made only to 'accredited investors' as defined in [Rule 501(a)]." [162] Securities sold without registration in reliance on this provision are not subject to the limitations on resale established in Rule 502(d) and, as such, are not "restricted securities" for purposes of Rule 144(a)(3)(ii).

We added Rule 504(b)(1)(iii) as a new exemption to Rule 504 in 1999.[163] It was an attempt to apply the appropriate federal securities law treatment to offerings made under state registration exemptions that satisfied its conditions. As an example of these exemptions, we cited the Model Accredited Investor

---

[159] 17 CFR 230.601 through 230.610a. Regulation E is an exemption from Securities Act registration, promulgated under Section 3(c) of the Securities Act, 15 U.S.C. 77c(c), for securities of small business investment companies.

[160] We recently proposed changes to Form D, the form required of issuers relying on Regulation D, that would include requiring each issuer submitting the form to certify that it is not disqualified from relying on Regulation D for one of the reasons stated in proposed Rule 502(e). See Release No. 33–8814 (June 29, 2007) [72 FR 37376].

[161] 17 CFR 230.504(b)(1)(iii).

[162] Rule 501(a) has been discussed at length at various places above. The other three Rule 504 exemptions, which would not be affected by the possible revisions we are discussing here, are contained in:

(a) The introductory clause of Rule 504(b)(1), 17 CFR 230.504(b)(1) (exemption for offers and sales of restricted securities that do not involve general solicitation and advertising); and

(b) Rules 504(b)(1)(i) and 504(b)(1)(ii), 17 CFR 230.504(b)(1)(i) and 230.504(b)(1)(ii) (exemptions for offers and sales of unrestricted securities that may involve general solicitation and advertising if the offering is registered under appropriate state securities laws that require the public filing and delivery of a disclosure document to investors before sale).

In a companion release, we have proposed to amend Form D, the notice that must be filed with us when an issuer sells securities in a Regulation D offering, to require issuers relying on Rule 504 to specify the precise Rule 504 exemption on which they are relying. See Release No. 33–8814 (June 29, 2007) [72 FR 37376]. One of the purposes of this change is to provide us with better information on the extent of use of the different types of Rule 504 offerings.

[163] See Release No. 33–7644 (Feb. 25, 1999) [64 FR 11090]. Previously, securities sold under Rule 504 were not deemed restricted securities.

**45134** Federal Register / Vol. 72, No. 154 / Friday, August 10, 2007 / Proposed Rules

Exemption, which was a model exemption developed in 1997 by the North American Securities Administrators Association.[164] It was our understanding at the time that securities issued under Rule 504(b)(1)(iii) generally could not be transferred under state law, and that immediate resale generally would not be possible.[165]

The addition of Rule 504(b)(1)(iii) in 1999 was part of a series of changes designed to deter abusive practices in Rule 504 offerings while not impeding legitimate "seed capital" offerings. The Commission had been concerned for some time with abusive practices in Rule 504 offerings, many of which involved "pump and dump" schemes for securities of non-reporting companies that traded over the counter. At the time, we stated that we would monitor the use of Rule 504 as revised and contact state securities regulators regarding their experience with these offerings. We further stated that if abusive practices involving Rule 504 continued, we would consider stronger measures in the future.[166]

In recent years, the Commission has taken enforcement action against numerous "pump and dump" schemes, most of which involve the securities of small companies without large market capitalization or significant market following.[167] Several of these cases have involved claims of purported compliance with Rule 504(b)(1)(iii) and state securities laws that are submitted to transfer agents as the basis for the issuance of securities without restrictive legends to permit immediate resale. In informal discussions, state securities regulators also have raised concerns about abusive practices involving Rule 504(b)(1)(iii) offerings. These factors lead us to question whether we should amend Rule 504(b)(1) to provide that the limitations on resale set forth in Rule 502(d) would apply to securities sold in a Rule 504(b)(1)(iii) transaction. Such an amendment would result in those securities being "restricted securities" for purposes of Rule 144.

In a companion release, we have proposed to amend Rule 144 to provide that non-affiliates receiving restricted securities of non-reporting companies would be eligible to resell those securities after 12 months without any restrictions.[168] A 12-month holding period would be consistent with the Model Accredited Investor Exemption. If we adopt the Rule 144 proposal and revise Rule 504(b)(1) to provide that securities sold in a Rule 504(b)(1)(iii) transaction are "restricted securities," the resale restrictions will be less stringent than under current Rule 144.[169]

Request for Comment

- The Commission seeks comment as to whether Regulation D should be amended so that securities sold in reliance on Rule 504(b)(1)(iii) pursuant to a state law exemption that permits sales only to accredited investors would be subject to the limitations on resale in Rule 502(d) and, as such, be deemed "restricted securities" for purposes of Rule 144.[170]
- If Regulation D were amended to make securities issued under Rule 504(b)(1)(iii) "restricted securities," would the amendment impose a significant burden on start-up and other smaller companies? If you believe so, please explain your reasons, given the resale restrictions typically required under state securities law exemptions. Do any states have resale restrictions that are narrower than would apply to "restricted securities"?

*E. Other Proposed Conforming Revisions*

1. Proposed Amendments to Rule 215

We propose to amend Rule 215 to conform the definition of "accredited investor" in Rule 215 with the definition in Rule 501(a) of Regulation D. Rule 215 defines accredited investor under Section 2(a)(15) of the Securities Act[171] for purposes of Section 4(6) of the Securities Act and would track the proposed definition in Rule 501(a) of Regulation D.

2. Proposed Amendment to Rule 144A

Rule 144A currently provides a safe harbor under Section 5 of the Securities Act for offers and resales of securities to a qualified institutional buyer or to an offeree or purchaser that the seller and any person acting on the seller's behalf reasonably believe is a qualified institutional buyer. A general announcement of an offering published by an issuer in accordance with Rule 507 may be deemed inconsistent with the requirement under Rule 144A that offers be made solely to such persons. As a result, we propose to add a Preliminary Note 8 to Rule 144A to clarify that publication of a general announcement of an offering in accordance with Rule 507 would not preclude resales pursuant to Rule 144A.

Request for Comment

- As proposed, Preliminary Note 8 to Rule 144A would not make any distinctions based on the type of security that is being offered pursuant to Rule 507. Should the Preliminary Note only apply to debt securities, as opposed to equity, because debt securities are more likely to be sold to institutional investors?

3. Delegated Authority

Under Rule 30–1,[172] the Commission has delegated to the Director of the Division of Corporation Finance the authority to grant applications for exemptions to the disqualification provisions under Regulation A and Rule 505. As we are proposing to include disqualification provisions for all Regulation D offerings, we propose to revise Rule 30–1(c) to delegate authority to the Director of the Division of Corporation Finance to grant applications for exemptions to the disqualification provisions of Regulation D.

**III. General Request for Comment**

The Commission is proposing these revisions. We welcome your comments. We solicit comment, both specific and general, on each component of the proposals. We request and encourage any interested person to submit comments regarding:

- The proposals that are the subject of this release;

---

[164] *Id.* A copy of the Model Accredited Investor Exemption is available on the NASAA Web site at http://www.nasaa.org/content/Files/Model%5FAccredited%5FInvestor%5FExemption.pdf.

[165] See Release No. 33–7644, n. 38.

[166] *Id.* Other suggested measures included the expansion of disqualification provisions similar to those in Rule 505(b)(2)(iii) and Rule 262. We propose to expand such disqualification provisions to all Regulation D offerings in this release. See II.C.2 above.

[167] See, *e.g.*, *SEC v. Integrated Services Group Inc.*, Lit. Release No. 19476 (Nov. 29, 2005) (reporting complaint filed in S.D. Tex.); *SEC v. Custom Designed Compressor Systems, Inc.*, Lit. Release No. 19101 (Feb. 28, 2005) (reporting complaint filed in D. N.M.).

[168] See Release No. 33–8813 (June 22, 2007) [72 FR 36822].

[169] For resales of securities by non-affiliates of the issuer, current Rule 144 requires a one-year holding period followed by an additional year when resales are subject to manner of sale restrictions, volume limitations, current public information requirements, and notice requirements. Unlimited resales may occur after the second year.

[170] We envision that any such amendment would not affect the resale status of securities sold under the exemptions in Rules 504(b)(1)(i) and 504(b)(1)(ii), which exempt certain offerings of securities that are registered under a state securities law that requires the public filing and delivery of a disclosure document to investors before sale. As such, the resale limitations of Rule 502(d) would continue not to apply to securities sold in transactions that are exempted by those rules and those securities would not be "restricted securities" for purposes of Rule 144.

[171] 15 U.S.C. 77b(a)(15).

[172] 17 CFR 200.30–1(b)(1), 200.30–1(c).