# EXHIBIT J

 LexisNexis®

4 of 100 DOCUMENTS

## TEXAS ADMINISTRATIVE CODE

\*\*\* This document reflects all regulations in effect as of March 31, 2010 \*\*\*

TITLE 7. BANKING AND SECURITIES
PART 7. STATE SECURITIES BOARD
CHAPTER 109. TRANSACTIONS EXEMPT FROM REGISTRATION

*7 TAC § 109.4   (2010)*

§ 109.4. Securities Registration Exemption for Sales to Financial Institutions and Certain Institutional Investors

(a) Availability. The exemption from securities registration provided by the Texas Securities Act, § 5.H, or this section is not available if the financial institution or other institutional investor named therein is in fact acting only as agent for another purchaser that is not a financial institution or other institutional investor listed in § 5.H or this section. These exemptions are available only if the financial institution or other institutional investor named therein is acting for its own account or as a bona fide trustee of a trust organized and existing other than for the purpose of acquiring the specific securities for which the seller is claiming the exemption.

(b) Sales to certain institutional investors. The State Securities Board, pursuant to the Act, § 5.T, exempts from the securities registration requirements of the Act, § 7, the offer and sale of any securities to any of the following persons:

(1) an "accredited investor" (as that term is defined in Rule 501(a)(1)-(4), (7), and (8) promulgated by the Securities and Exchange Commission (SEC) under the Securities Act of 1933, as amended (1933 Act), as made effective in SEC Release Number 33-6389, as amended in Release Numbers 33-6437, 33-6663, 33-6758, and 33-6825), excluding, however, any self-directed employee benefit plan with investment decisions made solely by persons that are "accredited investors" as defined in Rule 501(a)(5)-(6);

(2) any "qualified institutional buyer" (as that term is defined in Rule 144A(a)(1) promulgated by the SEC under the 1933 Act, as made effective in SEC Release Number 33-6862, and amended in Release Number 33-6963); and

(3) a corporation, partnership, trust, estate, or other entity (excluding individuals) having net worth of not less than $ 5 million, or a wholly-owned subsidiary of such entity, as long as the entity was not formed for the purpose of acquiring the specific securities.

(c) Financial statements. For purposes of determining a purchaser's total assets or net worth under this section, the issuer and the seller may rely upon the entity's most recent annual balance sheet or other financial statement which shall have been audited by an independent accountant or which shall have been verified by a principal of the purchaser.

SOURCE: The provisions of this § 109.4 adopted to be effective July 14, 2005, 30 TexReg 3987

NOTES:

LexisNexis 50 State Surveys, Legislation & Regulations

Securities Registration

# The Texas Securities Act

As Amended, Including All Amendments
Effective as of September 1, 2003

Italic faced type indicates amendments by the
78th Legislature

## TABLE OF CONTENTS

Section 1. Short Title of Act.

Section 2. Creating the State Securities Board and Providing for Appointment of Securities Commissioner.

o Section 2-1. Conflict of Interest.

o Section 2-2. Information about Standards of Conduct.

o Section 2-3. Training.

o Section 2-4. Division of Policy and Management Responsibilities.

o Section 2-5. Public Testimony.

o Section 2-6. Complaints Information.

o Section 2-7. Equal Employment Opportunity Policy Statement.

o Section 2-8. Information about State Employee Incentive Program.

Section 3. Administration and Enforcement by the Securities Commissioner and the Attorney General and Local Law Enforcement Officials.

o Section 3-1. Nonexclusivity of Means of Enforcement.

Section 4. Definitions.

Section 5. Exempt Transactions.

Section 6. Exempt Securities.

Section 7. Permit or Registration for Issue by Commissioner; Information for Issuance of Permit or Registration.

Section 8. Consent to Service.

Section 9. Protection to Porchasers of Securities.

Section 10. Examination of Application; Permit.

o Section 10-1. Purposes.

**Section 11.** Papers Filed with Commissioner; Records Open to Inspection.

**Section 12.** Registration of Persons Selling Securities or Rendering Investment Advice.

o **Section 12-1.** Notice Filing for Federal Covered Investment Advisers and Representatives of Federal Covered Investment Advisers.

**Section 13.** Method and Condition of Registration Required for Dealer, Agent, Investment Adviser, or Investment Adviser Representative.

o **Section 13-1.** Inspection.

**Section 14.** Denial, Suspension or Revocation of Registration as Dealer, Agent, Investment Adviser, or Investment Adviser Representative.

**Section 15.** Issuance of Registration Certificates to Dealers and Investment Advisers.

**Section 16.** Repealed.

**Section 17.** Form of Certificates to Dealer: and Investment Advisers.

**Section 18.** Registration of Agents of Dealers or of Representatives of Investment Advisers.

**Section 19.** Annual Registration; Renewals.

**Section 20.** Display or Advertisement of Fact of Registration Unlawful.

**Section 21.** Posting Registration Certificates.

**Section 22.** Regulation of Offers.

**Section 23.** Cease and Desist Orders; Cease Publication Orders; List of Securities Offered.

o **Section 23-1.** Assessment of Administrative Fines.

o **Section 23-2.** Emergency Cease and Desist Order.

**Section 24.** Hearings upon Exception to Actions of Commissioner.

**Section 25.** Revocation of Registration of

Any Dealer, Agent, Investment Adviser, or Investment Adviser Representative.

○ Section 25-1. Receiverships of Persons or Assets.

Section 26. Notices by Registered Mail.

Section 27. Judicial Review.

Section 28. Investigations, Investigatory Materials, and Registration Related Materials.

○ Section 28-1. Adoption of Rules and Regulations.

Section 29. Penal Provisions.

○ Section 29-1. Limitation.

○ Section 29-2. Aggregation of Amounts Involved in Securities Fraud.

○ Section 29-3. Criminal Responsibility of Corporation or Association.

Section 30. Certified Copies of Papers Filed with Commissioner as Evidence.

Section 31. Construction.

Section 32. Injunctions and Restitution.

Section 33. Civil Liability with Respect to Issuance or Sale of a Security.

○ Section 33-1. Civil Liability of Investment Advisers and Investment Adviser Representatives.

Section 34. Actions for Commission; Allegations and Proof of Compliance.

Section 35. Fees.

○ Section 35-1. Fees for Sales of Excess Securities.

○ Section 35-2. Fees for Sales of Unregistered Securities.

Section 36. Deposit to General Revenue Fund.

Section 37. Pleading Exemptions.

Section 38. Partial Invalidity; Severability

Section 39. Repeal of Securities Act and Insurance Securities Act Now in Effect; Saving Clause as to Pending Proceedings.

Section 40. Repealed.

**Section 41.** **Increase in Fees.**

**Section 42.** **Reduced Fees.**

**Section 43.** **Investor Education.**

# THE TEXAS SECURITIES ACT

As Amended, Including All Amendments Effective
as of September 1, 2003
*Italic faced type indicates amendments by the
77th Legislature*

### Sec. 1. Short Title of Act.

This Act shall be known and may be cited as
"The Securities Act."

### Sec. 2. Creating the State Securities Board and Providing for Appointment of Securities Commissioner.

A. The State Securities Board is hereby
created. The Board shall consist of five citizens
of the state appointed by the governor with the
advice and consent of the Senate. Members of
the Board serve for staggered terms of six
years, with as near as possible to one-third of
the members' terms expiring January 20 of
each odd-numbered year. Vacancies shall be
filled by the Governor for the unexpired term.
Members shall be eligible for reappointment.
Appointments to the Board shall be made
without regard to the race, color, disability,
sex, religion, age, or national origin of the
appointees.

B. Board members must be members of the
general public. A person is not eligible for
appointment as a member if the person or the
person's spouse:

(1) is registered as a dealer, agent, investment
adviser, or investment adviser representative;

(2) has an active notice filing under this Act to
engage in business in this state as an
investment adviser or investment adviser
representative;

(3) is employed by or participates in the
management of a business entity engaged in
business as a securities dealer or investment
adviser; or

(4) has, other than as a consumer, a financial
interest in a business entity engaged in

business as a securities dealer or investment adviser.

C. Repealed. House Bill 2255, Acts of the 77th Legislature, Regular Session, 2001.

D. Each member of the Board is entitled to per diem as set by legislative appropriation for each day that the member engages in the business of the Board. The Governor shall designate a member of the Board as the presiding officer of the Board to serve in that capacity at the will of the Governor. A majority of the members shall constitute a quorum for the transaction of any business.

E. It is a ground for removal from the Board that a member:

(1) does not have at the time of taking office the qualifications required by Subsection A or B of this section for appointment to the Board;

(2) does not maintain during service on the Board the qualifications required by Subsection A or B of this section for appointment to the Board;

(3) is ineligible for membership under Subsection B of this section or Subsection B or C of Section 2-1 of this Act;

(4) cannot, because of illness or disability, discharge the member's duties for a substantial part of the member's term; or

(5) is absent from more than half of the regularly scheduled Board meetings that the member is eligible to attend during a calendar year without an excuse approved by a majority vote of the Board.

F. The validity of an action of the Board is not affected by the fact that it is taken when a ground for removal of a Board member exists. If the Commissioner has knowledge that a potential ground for removal exists, the Commissioner shall notify the presiding officer of the Board of the potential ground. The presiding officer shall then notify the Governor and the attorney general that a potential ground for removal exists. If the potential ground for removal involves the presiding officer, the Commissioner shall notify the next highest ranking officer of the Board, who shall then notify the Governor and the attorney general that a potential ground for removal exists.

G. The Board shall appoint a Securities Commissioner who serves at the pleasure of

the Board and who shall, under the supervision of the Board, administer the provisions of this Act. Each member of the Board shall have access to all offices and records under his supervision, and the Board, or a majority thereof, may exercise any power or perform any act authorized to the Securities Commissioner by the provisions of this Act.

H. The Commissioner, with the consent of the Board, may designate a Deputy Securities Commissioner who shall perform all the duties required by law to be performed by the Securities Commissioner when the said Commissioner is absent or unable to act for any reason. The Commissioner shall appoint other persons as necessary to carry out the powers and duties of the Commissioner under this Act and other laws granting jurisdiction or applicable to the Board or the Commissioner. The Commissioner may delegate to the other persons appointed under this subsection powers and duties of the Commissioner as the Commissioner considers necessary.

I. Repealed. House Bill 2376, Chapter 285, Acts of the 78th Legislature, Regular Session, 2003.

J. On or before January 1 of each year, the Board, with the advice of the Commissioner, shall report to the Governor and the presiding officer of each house of the Legislature as to its administration of this Act, as well as plans and needs for future securities regulation. The report must include a detailed accounting of all funds received and disbursed by the Board during the preceding year.

K. The Commissioner or his designee shall develop an intraagency career ladder program, one part of which shall be the intraagency posting of all nonentry level positions for at least ten (10) days before any public posting. The Commissioner or his designee shall develop a system of annual performance evaluations based on measurable job tasks. All merit pay for Board employees must be based on the system established under this section.

L. The Board shall prepare information of consumer interest describing the regulatory functions of the Board and Commissioner and describing the Board's and Commissioner's procedures by which consumer complaints are filed with and resolved by the Board or Commissioner. The Board shall make the information available to the general public and appropriate state agencies. There shall be prominently displayed at all times in the place

of business of each dealer, agent, investment adviser, or investment adviser representative regulated under this Act, a sign containing the name, mailing address, and telephone number of the Board and a statement informing consumers that complaints against a dealer, agent, investment adviser, or investment adviser representative may be directed to the Board.

M. The financial transactions of the Board are subject to audit by the state auditor in accordance with Chapter 321, Government Code.

N. The Board and Commissioner are subject to Chapters 551, 2001, and 2002, Government Code.

O. The State Securities Board is subject to Chapter 325, Government Code (Texas Sunset Act). Unless continued in existence as provided by that chapter, the board is abolished and this Act expires September 1, 2013.

### Sec. 2-1. Conflict of Interest.

A. In this section, "Texas trade association" means a cooperative and voluntarily joined association of business or professional competitors in this state designed to assist its members and its industry or profession in dealing with mutual business or professional problems and in promoting their common interest.

B. A person may not be a member of the Board and may not be a Board employee employed in a "bona fide executive, administrative, or professional capacity," as that phrase is used for purposes of establishing an exemption to the overtime provisions of the federal Fair Labor Standards Act of 1938 (29 U.S.C. Section 201 et seq.) and its subsequent amendments, if:

(1) the person is an officer, employee, or paid consultant of a Texas trade association in a field regulated by the Board; or

(2) the person's spouse is an officer, manager, or paid consultant of a Texas trade association in a field regulated by the Board.

C. A person may not be a member of the Board or act as the general counsel to the Board if the person is required to register as a lobbyist under Chapter 305, Government Code, because of the person's activities for compensation on behalf of a profession related to the operation of the Board.

### Sec. 2-2. Information about Standards of Conduct.

The Commissioner or the Commissioner's designee shall provide to members of the Board and to Board employees, as often as necessary, information regarding the requirements for office or employment under this Act, including information regarding a person's responsibilities under applicable laws relating to standards of conduct for state officers or employees.

### Sec. 2-3. Training.

A. A person who is appointed to and qualifies for office as a member of the Board may not vote, deliberate, or be counted as a member in attendance at a meeting of the Board until the person completes a training program that complies with this section.

B. The training program must provide the person with information regarding:

(1) the legislation that created the Board;

(2) the programs operated by the Board;

(3) the role and functions of the Board;

(4) the rules of the Board with an emphasis on the rules that relate to disciplinary and investigatory authority;

(5) the current budget for the Board;

(6) the results of the most recent formal audit of the Board;

(7) the requirements of:

(A) the open meetings law, Chapter 551, Government Code;

(B) the public information law, Chapter 552, Government Code;

(C) the administrative procedure law, Chapter 2001, Government Code; and

(D) other laws relating to public officials, including conflict-of-interest laws; and

(8) any applicable ethics policies adopted by the Board or the Texas Ethics Commission.

C. A person appointed to the Board is entitled to reimbursement, as provided by the General Appropriations Act, for the travel expenses incurred in attending the training program regardless of whether the attendance at the program occurs before or after the person qualifies for office.

### Sec. 2-4. Division of Policy and Management Responsibilities.

The Board shall develop and implement policies that clearly separate the policymaking responsibilities of the Board and the management responsibilities of the Commissioner and employees of the Board.

### Sec. 2-5. Public Testimony.

The Board by rule shall develop and implement policies that provide the public with a reasonable opportunity to appear before the Board and to speak on any issue under the jurisdiction of the Board.

### Sec. 2-6. Complaints Information.

A. The Commissioner or the Commissioner's designee shall maintain a file on each written complaint filed with the Commissioner or Board concerning an employee, former employee, or person registered under this Act. The file must include:

(1) the name of the person who filed the complaint;

(2) the date the complaint is received by the Commissioner or Board;

(3) the subject matter of the complaint;

(4) the name of each person contacted in relation to the complaint;

(5) a summary of the results of the review or investigation of the complaint; and

(6) an explanation of the reason the file was closed, if the Commissioner closed the file without taking action other than to investigate the complaint.

B. The Commissioner or the Commissioner's designee shall provide to the person filing the complaint and to each person who is a subject of the complaint a copy of the Board's policies and procedures relating to complaint investigation and resolution.

C. The Commissioner or the Commissioner's designee, at least quarterly until final disposition of the complaint, shall notify the person filing the complaint and each person who is a subject of the complaint of the status of the investigation unless the notice would jeopardize an undercover investigation.

### Sec. 2-7. Equal Employment Opportunity Policy Statement.

A. The Commissioner or the Commissioner's

designee shall prepare and maintain a written policy statement that implements a program of equal employment opportunity to ensure that all personnel decisions are made without regard to race, color, disability, sex, religion, age, or national origin.

B. The policy statement must include:

(1) personnel policies, including policies relating to recruitment, evaluation, selection, training, and promotion of personnel, that show the intent of the Board to avoid the unlawful employment practices described by Chapter 21, Labor Code; and

(2) an analysis of the extent to which the composition of the Board's personnel is in accordance with state and federal law and a description of reasonable methods to achieve compliance with state and federal law.

C. The policy statement must:

(1) be updated annually;

(2) be reviewed by the state Commission on Human Rights for compliance with Subsection B (1) of this section; and

(3) be filed with the governor's office.

### Sec. 2-8. Information about State Employee Incentive Program.

The Commissioner or the Commissioner's designee shall provide to Board employees information and training on the benefits and methods of participation in the state employee incentive program.

### Sec. 3. Administration and Enforcement by the Securities Commissioner and the Attorney General and Local Law Enforcement Officials.

The administration of the provisions of this Act shall be vested in the Securities Commissioner. It shall be the duty of the Securities Commissioner and the Attorney General to see that its provisions are at all times obeyed and to take such measures and to make such investigations as will prevent or detect the violation of any provision thereof. The Commissioner shall at once lay before the District or County Attorney of the proper county any evidence which shall come to his knowledge of criminality under this Act. In the event of the neglect or refusal of such attorney to institute and prosecute such violation, the Commissioner shall submit such evidence to the Attorney General, who is hereby authorized

to proceed therein with all the rights, privileges and powers conferred by law upon district or county attorneys, including the power to appear before grand juries and to interrogate witnesses before such grand juries.

### Sec. 3-1. Nonexclusivity of Means of Enforcement.

The Commissioner may utilize any or all penalties, sanctions, remedies, or relief as the Commissioner deems necessary.

### Sec. 4. Definitions.

The following terms shall, unless the context otherwise indicates, have the following respective meanings:

A. The term "security" or "securities" shall include any limited partner interest in a limited partnership, share, stock, treasury stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certificate, preorganization certificate or receipt, subscription or reorganization certificate, note, bond, debenture, mortgage certificate or other evidence of indebtedness, any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security, whether similar to those herein referred to or not. *The term applies regardless of whether the "security" or "securities" are evidenced by a written instrument.* Provided, however, that this definition shall not apply to any insurance policy, endowment policy, annuity contract, optional annuity contract, or any contract or agreement in relation to and in consequence of any such policy or contract, issued by an insurance company subject to the supervision or control of the Texas Department of Insurance when the form of such policy or contract has been duly filed with the Department as now or hereafter required by law.

B. The terms "person" and "company" shall include a corporation, person, joint stock company, partnership, limited partnership, association, company, firm, syndicate, trust, incorporated or unincorporated, heretofore or

hereafter formed under the laws of this or any other state, country, sovereignty or political subdivision thereof, and shall include a government, or a political subdivision or agency thereof. As used herein, the term "trust" shall be deemed to include a common law trust, but shall not include a trust created or appointed under or by virtue of a last will and testament or by a court of law or equity.

C. The term "dealer" shall include every person or company other than an agent, who engages in this state, either for all or part of his or its time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to or orders for, or undertaking to dispose of, or to invite offers for any security or securities and every person or company who deals in any other manner in any security or securities within this state. Any issuer other than a registered dealer of a security or securities, who, directly or through any person or company, other than a registered dealer, offers for sale, sells or makes sales of its own security or securities shall be deemed a dealer and shall be required to comply with the provisions hereof; provided, however, this section or provision shall not apply to such issuer when such security or securities are offered for sale or sold either to a registered dealer or only by or through a registered dealer acting as fiscal agent for the issuer; and provided further, this section or provision shall not apply to such issuer if the transaction is within the exemptions contained in the provisions of Section 5 of this Act.

D. The term "agent" shall include every person or company employed or appointed or authorized by a dealer to sell, offer for sale or delivery, or solicit subscriptions to or orders for, or deal in any other manner, in securities within this state, whether by direct act or through subagents; provided, that the officers of a corporation or partners of a partnership shall not be deemed agents solely because of their status as officers or partners, where such corporation or partnership is registered as a dealer hereunder.

E. The terms "sale" or "offer for sale" or "sell" shall include every disposition, or attempt to dispose of a security for value. The term "sale" means and includes contracts and agreements whereby securities are sold, traded or exchanged for money, property or other things of value, or any transfer or agreement to transfer, in trust or otherwise. Any security

given or delivered with or as a bonus on
account of any purchase of securities or other
thing of value, shall be conclusively presumed
to constitute a part of the subject of such
purchase and to have been sold for value. The
term "sell" means any act by which a sale is
made, and the term "sale" or "offer for sale"
shall include a subscription, an option for sale,
a solicitation of sale, a solicitation of an offer to
buy, an attempt to sell, or an offer to sell,
directly or by an agent, by a circular, letter, or
advertisement or otherwise, including the
deposit in a United States Post Office or mail
box or in any manner in the United States
mails within this State of a letter, circular or
other advertising matter. Nothing herein shall
limit or diminish the full meaning of the terms
"sale," "sell" or "offer for sale" as used by or
accepted in courts of law or equity. The sale of
a security under conditions which entitle the
purchaser or subsequent holder to exchange
the same for, or to purchase some other
security, shall not be deemed a sale or offer for
sale of such other security; but no exchange
for or sale of such other security shall ever be
made unless and until the sale thereof shall
have been first authorized in Texas under this
Act, if not exempt hereunder, or by other
provisions of law.

F. The terms "fraud" or "fraudulent practice"
shall include any misrepresentations, in any
manner, of a relevant fact; any promise or
representation or prediction as to the future not
made honestly and in good faith, or an
intentional failure to disclose a material fact;
the gaining, directly or indirectly, through the
sale of any security, of an underwriting or
promotion fee or profit, selling or managing
commission or profit, so gross or exorbitant as
to be unconscionable; any scheme, device or
other artifice to obtain such profit, fee or
commission; provided, that nothing herein shall
limit or diminish the full meaning of the terms
"fraud," "fraudulent," and "fraudulent practice"
as applied or accepted in courts of law or
equity.

G. "Issuer" shall mean and include every
company or person who proposes to issue, has
issued, or shall hereafter issue any security.

H. "Broker" shall mean dealer as herein
defined.

I. "Mortgage" shall be deemed to include a
deed of trust to secure a debt.

J. If the sense requires it, words in the present

tense include the future tense, in the masculine gender include the feminine and neuter gender, in the singular number include the plural number, and in the plural number include the singular; "and" may be read "or" and "or" may be read "and".

K. "No par value" or "non-par" as applied to shares of stock or other securities shall mean that such shares of stock or other securities are without a given or specified par value. Whenever any classification or computation in this Act mentioned is based upon "par value" as applied to shares of stock or other securities of no par value, the amount for which such securities are sold or offered for sale to the public shall be used as a basis of such classification or computation.

L. The term "include" when used in a definition contained in this Act shall not be deemed to exclude other things or persons otherwise within the meaning of the term defined.

M. "Registered dealer" shall mean a dealer as hereinabove defined who has been duly registered by the Commissioner as in Section 15 of this Act provided.

N. "Investment adviser" includes a person who, for compensation, engages in the business of advising another, either directly or through publications or writings, with respect to the value of securities or to the advisability of investing in, purchasing, or selling securities or a person who, for compensation and as part of a regular business, issues or adopts analyses or a report concerning securities, as may be further defined by Board rule. The term does not include:

(1) a bank or a bank holding company, as defined by the Bank Holding Company Act of 1956 (12 U.S.C. Section 1841 et seq.), as amended, that is not an investment company;

(2) a lawyer, accountant, engineer, teacher, or geologist whose performance of the services is solely incidental to the practice of the person's profession;

(3) a dealer or agent who receives no special compensation for those services and whose performance of those services is solely incidental to transacting business as a dealer or agent;

(4) the publisher of a bona fide newspaper, news magazine, or business or financial publication of general and regular circulation;

or

(5) a person whose advice, analyses, or report does not concern a security other than a security that is:

(A) a direct obligation of or an obligation the principal or interest of which is guaranteed by the United States government; or

(B) issued or guaranteed by a corporation in which the United States has a direct or indirect interest and designated by the United States Secretary of the Treasury under Section 3(a) (12), Securities Exchange Act of 1934 (15 U.S.C. Section 78c(a)(12)), as amended, as an exempt security for purposes of that Act.

O. "Federal covered investment adviser" means an investment adviser who is registered under the Investment Advisers Act of 1940 (15 U.S.C. Section 80b-1 et seq.), as amended.

P. "Investment adviser representative" or "representative of an investment adviser" includes each person or company who, for compensation, is employed, appointed, or authorized by an investment adviser to solicit clients for the investment adviser or who, on behalf of an investment adviser, provides investment advice, directly or through subagents, as defined by Board rule, to the investment adviser's clients. The term does not include a partner of a partnership or an officer of a corporation or other entity that is registered as an investment adviser under this Act solely because of the person's status as an officer or partner of that entity.

Q. "Registered investment adviser" means an investment adviser who has been issued a registration certificate by the Commissioner under Section 15 of this Act.

### Sec. 5. Exempt Transactions.

Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed a dealer within the meaning of this Act; that is to say, the provisions of this Act shall not apply to any sale, offer for sale, solicitation, subscription, dealing in or delivery of any security under any of the following transactions or conditions:

A. At any judicial, executor's, administrator's, guardian's or conservator's sale, or any sale by

a receiver or trustee in insolvency or bankruptcy.

B. The sale by or for the account of a pledge holder or mortgagee, selling or offering for sale or delivery in the ordinary course of business to liquidate a bona fide debt, of a security pledged in good faith as security for such debt.

C. (1) Sales of securities made by or in behalf of a vendor, whether by dealer or other agent, in the ordinary course of bona fide personal investment of the personal holdings of such vendor, or change in such investment, if such vendor is not engaged in the business of selling securities and the sale or sales are isolated transactions not made in the course of repeated and successive transactions of a like character; provided, that in no event shall such sales or offerings be exempt from the provisions of this Act when made or intended by the vendor or his agent, for the benefit, either directly or indirectly, of any company or corporation except the individual vendor (other than a usual commission to said agent), and provided further, that any person acting as agent for said vendor shall be registered pursuant to this Act;

(2) Sales by or on behalf of any insurance company subject to the supervision or control of the Texas Department of Insurance of any security owned by such company as a legal and bona fide investment, provided that in no event shall any such sale or offering be exempt from the provisions of this Act when made or intended, either directly or indirectly, for the benefit of any other company as that term is defined in this Act.

D. The distribution by a corporation of securities direct to its stockholders as a stock dividend or other distribution paid out of earnings or surplus.

E. Any offer and any transaction pursuant to any offer by the issuer of its securities to its existing security holders (including persons who at the time of the transaction are holders of convertible securities or nontransferable warrants) if no commission or other remuneration (other than a stand-by commission) is paid or given directly or indirectly for soliciting any security holder in this State.

F. The issue in good faith of securities by a company to its security holders, or creditors, in the process of a bona fide reorganization of the

company made in good faith, or the issue in good faith of securities by a company, organized solely for the purpose of taking over the assets and continuing the business of a predecessor company, to the security holders or creditors of such predecessor company, provided that in either such case such securities are issued in exchange for the securities of such holders or claims of such creditors, or both, and in either such case security holders or creditors do not pay or give or promise and are not obligated to pay or give any consideration for the securities so issued other than the securities of or claims against said company or its predecessor then held or owned by them.

G. The issue or sale of securities (a) by one corporation to another corporation or the security holders thereof pursuant to a vote by one or more classes of such security holders, as required by the certificate of incorporation or the applicable corporation statute, in connection with a merger, consolidation or sale of corporate assets, or (b) by one corporation to its own stockholders in connection with the change of par value stock to no par value stock or vice versa, or the exchange of outstanding shares for the same or a greater or smaller number of shares; provided that in any such case such security holders do not pay or give or promise and are not obligated to pay or give any consideration for the securities so issued or sold other than the securities of the corporation then held by them.

H. The sale of any security to any bank, trust company, building and loan association, insurance company, surety or guaranty company, savings institution, investment company as defined in the Investment Company Act of 1940, small business investment company as defined in the Small Business Investment Act of 1958, as amended, or to any registered dealer actually engaged in buying and selling securities.

I. Provided such sale is made without any public solicitation or advertisements:

(a) the sale of any security by the issuer thereof so long as the total number of security holders of the issuer thereof does not exceed thirty-five (35) persons after taking such sale into account;

(b) the sale or distribution by an issuer or a participating subsidiary of the issuer, if any, of a security under a bona fide thrift, savings,

stock purchase, retirement, pension, profit-
sharing, option, bonus, appreciation right,
incentive, or similar written compensation plan
or written compensation contract established
by the issuer or its subsidiary for the benefit of
employees, directors, general partners,
managers, or officers of the issuer or
subsidiary, for the benefit of its trustees if the
issuer or subsidiary is a business trust, or for
the benefit of consultants or advisors who
provide to the issuer or subsidiary bona fide
services unrelated to the offer or sale of
securities in a capital-raising transaction; or

(c) the sale by an issuer of its securities during
the period of twelve (12) months ending with
the date of the sale in question to not more
than fifteen (15) persons (excluding, in
determining such fifteen (15) persons,
purchasers of securities in transactions exempt
under other provisions of this Section 5,
purchasers of securities exempt under Section
6 hereof and purchasers of securities which are
part of an offering registered under Section 7
hereof), provided such persons purchased such
securities for their own account and not for
distribution.

J. Wherein the securities disposed of consist
exclusively of notes or bonds secured by
mortgage or vendor's lien upon real estate or
tangible personal property, and the entire
mortgage is sold or transferred with all of the
notes or bonds secured thereby in a single
transaction.

K. Any security or membership issued by a
corporation or association, organized
exclusively for religious, educational,
benevolent, fraternal, charitable, or
reformatory purposes and not for pecuniary
profit, and no part of the net earnings of which
inures to the benefit of any stockholder,
shareholder, or individual members, and where
no commission or remuneration is paid or given
or is to be paid or given in connection with the
disposition thereof.

L. The sale by the issuer itself, or by a
registered dealer, of any security issued or
guaranteed by any bank organized and subject
to regulation under the laws of the United
States or under the laws of any State or
territory of the United States, or any insular
possession thereof, or by any savings and loan
association organized and subject to regulation
under the laws of this State, or the sale by the
issuer itself of any security issued by any

federal savings and loan association.

M. The sale by the issuer itself, or by a
registered dealer, of any security either issued
or guaranteed by the United States or by any
territory or insular possession thereof, or by
the District of Columbia, or by any state of the
United States, or political subdivision thereof
(including but not limited to any county, city,
municipal corporation, district, or authority), or
by any public or governmental agency or
instrumentality of any of the foregoing.

N. The sale and issuance of any securities
issued by any farmers' cooperative marketing
association organized under Chapter 52,
Agriculture Code, or the predecessor of that
law (Article 5737 et seq., Revised Statutes);
the sale and issuance of any securities issued
by any mutual loan corporation organized
under Chapter 54, Agriculture Code, or the
predecessor of that law (Article 2500 et seq.,
Revised Statutes); the sale and issuance of any
equity securities issued by any cooperative
association organized under the Cooperative
Association Act, as amended (Article 1396-
50.01, Vernon's Texas Civil Statutes); and the
sale of any securities issued by any farmers'
cooperative society organized under Chapter
51, Agriculture Code, or the predecessor of that
law (Article 2514 et seq., Revised Statutes).
Provided, however, this exemption shall not be
applicable to agents of any farmers'
cooperative marketing association, mutual loan
corporation, cooperative association, or
farmers' cooperative society when the sale of
such securities is made to non-members, or
when the sale of such securities is made to
members or non-members and a commission is
paid or contracted to be paid to the said
agents.

O. The sale by a registered dealer of
outstanding securities provided that:

(1) Such securities form no part of an unsold
allotment to or subscription by such dealer as a
participant in the distribution of such securities
by the issuer thereof; and

(2) Securities of the same class, of the same
issuer, are outstanding in the hands of the
public; and

(3) Such securities are offered for sale, in good
faith, at prices reasonably related to the
current market price of such securities at the
time of such sale; and

(4) No part of the proceeds of such sale are

paid directly or indirectly to the issuer of such securities; and

(5) Such sale is not directly or indirectly for the purposes of providing or furthering any scheme to violate or evade any provision of this Act; and

(6) The right to sell or resell such securities has not been enjoined by any court of competent jurisdiction in this State by proceedings instituted by an officer or agency of this State charged with enforcement of this Act; and

(7) The right to sell such securities has not been revoked or suspended by the Commissioner under any of the provisions of this Act, or, if so, revocation or suspension is not in force and effect; and

(8) At the time of such sale, the issuer of such securities shall be a going concern actually engaged in business and shall then be neither in an organization stage nor in receivership or bankruptcy; and

(9) Such securities or other securities of the issuer of the same class have been registered by qualification, notification or coordination under Section 7 of this Act; or at the time of such sale at least the following information about the issuer shall appear in a recognized securities manual or in a statement, in form and extent acceptable to the Commissioner, filed with the Commissioner by the issuer or by a registered dealer:

(a) A statement of the issuer's principal business;

(b) A balance sheet as of a date within eighteen (18) months of the date of such sale; and

(c) Profit and loss statements and a record of the dividends paid, if any, for a period of not less than three (3) years prior to the date of such balance sheet or for the period of existence of the issuer, if such period of existence is less than three (3) years.

The term "recognized securities manual" means a nationally distributed manual of securities that is approved for use hereunder by the Board.

The Commissioner may issue a stop order or by order prohibit, revoke or suspend the exemption under this Subsection O with respect to any security if the Commissioner has reasonable cause to believe that the plan of

business of the issuer of such security, the security, or the sale thereof would tend to work a fraud or deceit upon any purchaser or purchasers thereof, such order to be subject to review in the manner provided by Section 24 of this Act. Notice of any court injunction enjoining the sale, or resale, of any such security, or of an order revoking or suspending the exemption under this subdivision with respect to any security, shall be delivered or shall be mailed by certified or registered mail with return receipt requested, to any dealers believed to be selling, or offering for sale, securities of the type referred to in the notice; and the prohibitions of (6) and (7) above of this Subsection O shall be inapplicable to any dealer until the dealer has received actual notice from the Commissioner of such revocation or suspension.

The Board may for cause shown revoke or suspend the recognition hereunder of any manuals previously approved under this Subsection but no such action may be taken unless upon notice and opportunity for hearing before the Board or a hearings officer as now or hereafter required by law. A judgment sustaining the Board in the action complained of shall not bar after one year an application by the plaintiff for approval of its manual or manuals hereunder, nor shall a judgment in favor of the plaintiff prevent the Board from thereafter revoking such recognition for any proper cause which may thereafter accrue or be discovered.

P. The execution by a dealer of an unsolicited order for the purchase of securities, where the initial offering of such securities has been completed and provided that the dealer acts solely as an agent for the purchaser, has no direct or indirect interest in the sale or distribution of the security ordered, and receives no commission, profit, or other compensation from any source other than the purchaser.

Q. The sales of interests in and under oil, gas or mining leases, fees or titles, or contracts relating thereto, where (1) the total number of sales by any one owner of interests, whether whole, fractional, segregated or undivided in any single oil, gas or mineral lease, fee or title, or contract relating thereto, shall not exceed thirty-five (35) within a period of twelve (12) consecutive months and (2) no use is made of advertisement or public solicitation; provided, however, if such sale or sales are made by an

agent for such owner or owners, such agent shall be licensed pursuant to this Act. No oil, gas or mineral unitization or pooling agreement shall be deemed a sale under this Act.

R. The sale by the issuer itself, or by a subsidiary of such issuer, of any securities which would be exempt if sold by a registered dealer under Section 6 (other than Section 6E) of this Act.

S. The sale by or through a registered dealer of any option if at the time of the sale of the option:

(1) the performance of the terms of the option is guaranteed by any broker-dealer registered under the federal Securities Exchange Act of 1934, as amended, which guaranty and broker-dealer are in compliance with such requirements or regulations as may be approved or adopted by the Board;

(2) the option is not sold by or for the benefit of the issuer of the security which may be purchased or sold upon exercise of the option;

(3) the security which may be purchased or sold upon exercise of the option is either (a) exempted under Subsection F of Section 6 of this Act or (b) quoted on the NASDAQ stock market and meets the requirements of Paragraphs (1), (6), (7), and (8) of Subsection O of Section 5 of this Act; and

(4) such sale is not directly or indirectly for the purposes of providing or furthering any scheme to violate or evade any provisions of this Act.

For purposes of this subsection the term "option" shall mean and include any put, call, straddle, or other option or privilege of buying or selling a specified number of securities at a specified price from or to another person, without being bound to do so, on or prior to a specified date, but such term shall not include any option or privilege which by its terms may terminate prior to such specified date upon the occurrence of a specified event.

T. Such other transactions or conditions as the Board by rule, regulation, or order may define or prescribe, conditionally or unconditionally.

U. The issuance or transfer of securities by the issuer of its securities to a corporation or association, organized exclusively for religious, educational, benevolent, fraternal, charitable, or reformatory purposes and not for pecuniary profit, only if:

(a) the corporation or association does not provide anything of value for the securities other than, in the case of any security that is an option, payment of the exercise price of the option to acquire the securities at a price not to exceed the fair market value of the underlying securities on the date the option was granted;

(b) the issuance or transfer of securities is not made for the purpose of raising capital for the issuer;

(c) no commission or other form of consideration is paid or provided to a third party with respect to the issuance or transfer; and

(d) the issuance or transfer is not directly or indirectly for the purpose of providing or furthering a scheme in violation of or to evade this Act.

**Sec. 6. Exempt Securities. Except as hereinafter in this Act expressly provided, the provisions of this Act shall not apply to any of the following securities when offered for sale, or sold, or dealt in by a registered dealer or agent of a registered dealer:**

A. Repealed. Senate Bill 293, Chapter 160, Acts of the 66th Legislature, Regular Session, 1979.

B. Repealed. Senate Bill 293, Chapter 160, Acts of the 66th Legislature, Regular Session, 1979.

C. Repealed. Senate Bill 293, Chapter 160, Acts of the 66th Legislature, Regular Session, 1979.

D. Any security issued or guaranteed either as to principal, interest, or dividend, by a corporation owning or operating a railroad or any other public service utility; provided, that such corporation is subject to regulation or supervision either as to its rates and charges or as to the issue of its own securities by the Railroad Commission of Texas, or by a public commission, agency, board or officers of the Government of the United States, or of any territory or insular possession thereof, or of any state or municipal corporation, or of the District of Columbia, or of the Dominion of Canada, or any province thereof; also equipment trust certificates or equipment notes or bonds based on chattel mortgages, leases or agreements for conditional sale of cars, motive power or other rolling stock mortgages, leased or sold to or furnished for the use of or upon a railroad or other public service utility corporation, provided that such corporation is

subject to regulation or supervision as above;
or equipment trust certificates, or equipment
notes or bonds where the ownership or title of
such equipment is pledged or retained in
accordance with the provisions of the laws of
the United States, or of any state, territory or
insular possession thereof, or of the District of
Columbia, or the Dominion of Canada, or any
province thereof, to secure the payment of
such equipment trust certificates, bonds or
notes.

E. Any security issued and sold by a domestic
corporation without capital stock and not
organized and not engaged in business for
profit.

F. Securities which at the time of sale have
been fully listed upon the American Stock
Exchange, the Boston Stock Exchange, the
Chicago Stock Exchange or the New York Stock
Exchange, have been designated or approved
for designation on notice of issuance on the
national market system of the NASDAQ stock
market, or have been fully listed upon any
recognized and responsible stock exchange
approved by the Commissioner as hereinafter
in this section provided, and also all securities
senior to, or if of the same issues, upon a
parity with, any securities so listed or
designated or represented by subscription
rights which have been so listed or designated,
or evidence of indebtedness guaranteed by any
company, any stock of which is so listed or
designated, such securities to be exempt only
so long as the exchange upon which such
securities are so listed remains approved under
the provisions of this Section. Application for
approval by the Commissioner may be made by
any organized stock exchange in such manner
and upon such forms as may be prescribed by
the Commissioner, but no approval of any
exchange shall be given unless the facts and
data supplied with the application shall be
found to establish:

(1) That the requirements for the listing of
securities upon the exchange so seeking
approval are such as to effect reasonable
protection to the public;

(2) That the governing constitution, bylaws or
regulations of such exchange shall require:

1st: An adequate examination into the affairs
of the issuer of the securities which are to be
listed before permitting trading therein;

2nd: That the issuer of such securities, so long

as they be listed, shall periodically prepare, make public and furnish promptly to the exchange, appropriate financial, income, and profit and loss statements;

3rd: Securities listed and traded in on such exchange to be restricted to those of ascertained, sound asset or income value;

4th: A reasonable surveillance of its members, including a requirement for periodical financial statements and a determination of the financial responsibility of its members and the right and obligation in the governing body of such exchange to suspend or expel any member found to be financially embarrassed or irresponsible or found to have been guilty of misconduct in his business dealings, or conduct prejudicial of the rights and interests of his customers;

The approval of any such exchange by the Commissioner shall be made only after a reasonable investigation and hearing, and shall be by a written order of approval upon a finding of fact substantially in accordance with the requirements hereinabove provided. The Commissioner, upon ten (10) days notice and hearing, shall have power at any time to withdraw approval theretofore granted by him to any such stock exchange which does not at the time of hearing meet the standards of approval under this Act, and thereupon securities so listed upon such exchange shall be no longer entitled to the benefit of such exemption except upon the further order of said Commissioner approving such exchange.

By the same procedure set out in the preceding paragraph with respect to exchanges approved by the Commissioner, the Commissioner may suspend the exempt status of any trading system exempted by the Legislature on or after January 1, 1989, if that system does not at the time of hearing meet the applicable standards for approval of exchanges prescribed by this Act. The suspension has the same effect as the removal of approval of an exchange. The suspension remains in effect until the Commissioner by order determines that the trading system has corrected the deficiency or deficiencies on which the suspension was based and maintains standards and procedures that provide reasonable protection to the public.

G. Repealed. Senate Bill 293, Chapter 160, Acts of the 66th Legislature, Regular Session, 1979.

H. Any commercial paper that arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and that evidences an obligation to pay cash within nine months of the date of issuance, exclusive of days of grace, or any renewal of such paper that is likewise limited, or any guarantee of such paper or of any such renewal.

I. Notes, bonds, or other evidence of indebtedness or certificates of ownership which are equally and proportionately secured without reference of priority of one over another, and which, by the terms of the instrument creating the lien, shall continue to be so secured by the deposit with a trustee of recognized responsibility approved by the Commissioner of any of the securities specified in Subsection M of Section 5 or Subsection D of Section 6; such deposited securities, if of the classes described in Subsection M of Section 5, having an aggregate par value of not less than one hundred and ten per cent (110%) of the par value of the securities thereby secured, and if of class specified in Subsection D of Section 6, having an aggregate par value of not less than one hundred and twenty five per cent (125%) of the par value of the securities thereby secured.

J. Notes, bonds or other evidence of indebtedness of religious, charitable or benevolent corporations.

### Sec. 7. Permit or Registration for Issue by Commissioner; Information for Issuance of Permit or Registration.

### A. Qualification of Securities.

(1) No dealer or agent shall sell or offer for sale any securities issued after September 6, 1955, except those which shall have been registered by Notification under subsection B or by Coordination under subsection C of this Section 7 and except those which come within the classes enumerated in Section 5 or Section 6 of this Act, until the issuer of such securities or a dealer registered under the provisions of this Act shall have been granted a permit by the Commissioner; and no such permit shall be granted by the Commissioner until the issuer of such securities or a dealer registered under the provisions of this Act shall have filed with the Commissioner a sworn statement verified under the oath of an executive officer or partner of the issuer, or of such registered dealer, and attested by the secretary or partner

thereof, setting forth the following information:

a. The names, residences and post office addresses of the officers and directors of the company;

b. The location of its principal office and of all branch offices in this State, if any;

c. A copy of its articles of incorporation or partnership or association, as the case may be, and of any amendments thereto, if any; if a corporation, a copy of all minutes of any proceedings of its directors, stockholders or members relating to or affecting the issue of said security; if a corporation, a copy of its bylaws and of any amendments thereto; if a trustee, a copy of all instruments by which the trust is created and in which it is accepted, acknowledged or declared;

d. A statement showing the amount of capital stock, if any, and if no capital stock, the amount of capital of the issuer that is contemplated to be employed; the number of shares into which such stock is divided, or if not divided into shares of stock, what division is to be made or is contemplated; the par value of each share, or if no par stock, the price at which such security is proposed to be sold; the promotional fees or commissions to be paid for the sale of same, including any and all compensations of every nature that are in any way to be allowed the promoters or allowed for the sale of same; and how such compensation is to be paid, whether in cash, securities, service or otherwise, or partly of either or both; also, the amount of cash to be paid, or securities to be issued, given, transferred or sold to promoters for promotion or organization services and expenses, and the amount of promotion or organization services and expenses which will be assumed or in any way paid by the issuer;

e. Copies of certificates of the stock and all other securities to be sold, or offered for sale, together with application blanks therefor; a copy of any contract it proposes to make concerning such security; a copy of any prospectus or advertisement or other description of security prepared by or for it for distribution or publication;

f. 1. A detailed statement prepared in accordance with generally accepted auditing standards and procedures and generally accepted accounting principles, showing all the assets and all the liabilities of the issuer, said

statement to reflect the financial condition of
the issuer on a day not more than ninety (90)
days prior to the date such statement is filed.
Such statement shall list all assets in detail and
shall show how the value of such assets was
determined, that is, whether the value set forth
in said statement represents the actual cost in
money of such assets, or whether such value
represents their present market value, or some
other value than the actual cost in money, and
shall show the present actual value of said
assets; also, whether the value set forth in the
statement is greater or less than the actual
cost value in money and greater or less than
the present market value of such assets. If any
of the assets consist of real estate, then said
statement shall show the amount for which said
real estate is rendered for State and county
taxes, or assessed for taxes. If any such assets
listed shall consist of anything other than cash
and real estate, same shall be set out in detail
so as to give the Commissioner the fullest
possible information concerning same, and the
Commissioner shall have the power to require
the filing of such additional information as the
Commissioner may deem necessary to
determine whether or not the true value of said
assets are reflected in the statement filed.
Should any of the assets listed in said
statement be subject to any repurchase
agreement, or any other agreement of like
character, by the terms of which the absolute
ownership of, or title to said assets is qualified
or limited in any way, then the terms and
conditions of said agreement by which the
absolute ownership of, or title to said assets is
qualified or limited, as well as the amount and
character of the assets subject thereto shall be
fully stated. Said statement shall list all current
liabilities, that is, all liabilities which will mature
and become due within one year from the date
of such application, and shall list separately
from such current liabilities, all other liabilities,
contingent or otherwise, showing the amount
of those which are secured by mortgage or
otherwise, the assets of the issuer which are
subject to such mortgage, and the dates of
maturity of any such mortgage indebtedness.
Such application shall also include a detailed
income statement, prepared in accordance with
generally accepted auditing standards and
procedures and generally accepted accounting
principles, which shall cover the last three (3)
years' operations of the issuer, if such issuer
has been in operation for three (3) years, but if
not, said income statement shall cover the time

that said issuer has been operating. If said issuer has not been operating, but is taking over a concern of any kind which has been previously operating, an income statement showing the operations of the concern thus taken over for a period of the last three (3) years next preceding the taking over of said concern shall be included in said statement; said income statement shall clearly reflect the amount of net income or net loss incurred during each of the years shown.

2. The financial statements required in subparagraph (1) of this paragraph for a small business issuer, as defined by Board rule, may be reviewed by an independent certified public accountant in accordance with the Statements on Standards for Accounting and Review Services promulgated by the American Institute of Certified Public Accountants in lieu of being audited and certified, provided that the small business issuer otherwise meets all of the requirements that the Board by rule, regulation, or order may prescribe, conditionally or unconditionally.

### B. Registration by Notification.

(1) Securities may be registered by notification under this subsection B if they are issued by an issuer which has been in continuous operation for not less than three (3) years and which has shown, during the period of not less than three (3) years next prior to the date of registration under this section, average annual net earnings after deducting all prior charges including income taxes except charges upon securities to be retired out of the proceeds of sale, as follows:

a. In the case of interest-bearing securities, not less than one and one-half times the annual interest charges on such securities and on all other outstanding interest-bearing securities of equal rank;

b. In the case of securities having a specified dividend rate, not less than one and one-half times the annual dividend requirements on such securities and on all outstanding securities of equal rank;

c. In the case of securities wherein no dividend rate is specified, not less than five percent (5%) on all outstanding securities of equal rank, together with the amount of such securities then offered for sale, based upon the maximum price at which such securities are to be offered for sale. The ownership by an issuer

of more than fifty percent (50%) of the outstanding voting stock of a corporation shall be construed as the proportionate ownership of such corporation and shall permit the inclusion of the earnings of such corporation applicable to the payment of dividends upon the stock so owned in the earnings of the issuer of the securities being registered by notification.

(2) Securities entitled to registration by notification shall be registered by the filing with the Commissioner by the issuer or by a registered dealer of a registration statement as required by paragraph a of this subdivision, and completion of the procedures outlined in paragraph b of this subdivision:

a. A registration statement in a form prescribed by the Commissioner signed by the applicant filing such statement and containing the following information:

1. Name and business address of main office of issuer and address of issuer's principal office, if any, in this state;

2. Title of securities being registered and total amount of securities to be offered;

3. Price at which securities are to be offered for sale to the public, amount of securities to be offered in this state, and amount of registration fee, computed as hereinafter provided;

4. A brief statement of the facts which show that the securities are entitled to be registered by notification;

5. Name and business address of the applicant filing the statement;

6. Financial statements to include a certified income statement, a certified balance sheet, and a certified statement of stockholders' equity, each to be for a period of not less than three (3) years prior to the date of registration. These financial statements shall reflect the financial condition of the issuer as of a date not more than ninety (90) days prior to the date of such filing with the Commissioner;

7. A copy of the prospectus, if any, describing such securities;

8. Filing of a consent to service of process conforming to the requirements of Section 8 of this Act, if the issuer is registering the securities and is not a resident of this state or is not incorporated under the laws of this state.

b. Such filing with the Commissioner shall constitute the registration of securities by

notification and such registration shall become effective five (5) days after receipt of the registration statement and all accompanying papers by the Commissioner; provided that the Commissioner may in his discretion waive or reduce the five (5) days waiting period in any case where he finds no injury to the public will result therefrom. Upon such registration by notification, securities may be sold in this state by registered dealers and registered salesmen. Upon the receipt of a registration statement, prospectus, if any, payment of the filing fee and registration fee, and, if required, a consent to service of process, the Commissioner shall record the registration by notification of the securities described. Such registration shall be effective for a period of one (1) year and may be renewed for additional periods of one (1) year, if the securities are entitled to registration under this subsection at the time of renewal, by a new filing under this section together with the payment of the renewal fee of Ten Dollars ($10.00).

c. If at any time, before or after registration of securities under this section, in the opinion of the Commissioner the information in a registration statement filed with him is insufficient to establish the fact that the securities described therein are, or were, entitled to registration by notification under this section, or that the registration information contains, or contained, false, misleading or fraudulent facts, he may order the applicant who filed such statement to cease and desist from selling, or offering for sale, such securities registered, or proposed to be registered, under provisions of this section, until there is filed with the Commissioner such further information as may in his judgment be necessary to establish the fact that such securities are, or were, entitled to registration under this section. The provisions of Section 24 of this Act as to hearing shall be applicable to an order issued hereunder.

## C. Registration by Coordination.

(1) Any security for which a registration statement has been filed under the federal Securities Act of 1933, as amended, in connection with the same offering, may be registered by coordination. A registration statement under this section shall be filed with the Commissioner by the issuer or any registered dealer, shall contain the following information, and shall be accompanied by the following documents:

a. One copy of the prospectus filed under the Securities Act of 1933 together with all amendments thereto;

b. The amount of securities to be offered in this state;

c. The states in which a registration statement or similar document in connection with the offering has been or is expected to be filed;

d. Any adverse order, judgment or decree previously entered in connection with the offering by any court or the Securities and Exchange Commission;

e. A copy of the articles of incorporation and bylaws (or their substantial equivalents) currently in effect, a copy of any agreements with or among underwriters, a copy of any indenture or other instrument governing the issuance of the security to be registered, and a specimen or copy of the security;

f. If the Commissioner requests any other information, or copies of any other documents, filed under the Federal Securities Act of 1933;

g. An undertaking to forward promptly all amendments to the federal registration statement, other than an amendment which merely delays the effective date; and

h. If the registration statement is filed by the issuer, or by a dealer who will offer such securities for sale as the agent of the issuer, and the issuer is not a resident of this state or is not incorporated under the laws of this state, a consent to service of process conforming to the requirements of Section 8.

(2) Upon receipt of a registration statement under this section the Commissioner shall examine such registration statement and he may enter an order denying registration of the securities described therein if he finds that the registrant has not proven the proposed plan of business of the issuer to be fair, just and equitable, and also that any consideration paid, or to be paid, for such securities by promoters is fair, just and equitable when such consideration for such securities is less than the proposed offering price to the public, and that the securities which it proposes to issue and the methods to be used by it in issuing and disposing of the same will be such as will not work a fraud upon the purchaser thereof. If the Commissioner enters an order denying the registration of securities under this section, he shall notify the registrant immediately. The

provisions of Section 24 of this Act as to hearing shall be applicable to an order issued hereunder. A registration statement under this section automatically becomes effective at the moment the federal registration statement becomes effective if all the following conditions are satisfied:

a. No order has been entered by the Commissioner denying registration of the securities;

b. The registration statement has been on file with the Commissioner for at least ten (10) days; and

c. A statement of the maximum and minimum proposed offering prices and the maximum underwriting discounts and commissions has been on file for two full business days or such shorter period as the Commissioner expressly permits and the offering is made within those limitations. The registrant shall promptly notify the Commissioner by telephone or telegram of the date and time when the federal registration statement became effective and the content of the price amendment, if any, and shall promptly file a post-effective amendment containing the information and documents in the price amendment. "Price amendment" means the final federal amendment which includes a statement of the offering price, underwriting and selling discounts or commissions, amount of proceeds, conversion rates, call prices, and other matters dependent upon the offering price.

Upon failure to receive the required notification and post-effective amendment with respect to the price amendment, the Commissioner may enter a stop order, without notice or hearing, retroactively denying effectiveness to the registration statement or suspending its effectiveness until compliance with this subsection, if he promptly notifies the registrant by telephone or telegram (and promptly confirms by letter or telegram when he notifies by telephone) of the issuance of the order. If the registrant proves compliance with the requirements of this subsection as to notice and post-effective amendment, the stop order is void as of the time of its entry. The Commissioner may waive either or both of the conditions specified in clauses b and c. If the federal registration statement becomes effective before all these conditions are satisfied and they are not waived, the registration statement automatically becomes

effective as soon as all the conditions are satisfied. If the registrant advises the Commissioner of the date when the federal registration statement is expected to become effective the Commissioner shall promptly advise the registrant by telephone or telegram, at the registrant's expense, whether all the conditions are satisfied and whether he then contemplates the issuance of an order denying registration; but this advice by the Commissioner does not preclude the issuance of such an order at any time.

(3) Registration of securities under this subsection shall be effective for the following periods:

a. The initial registration of securities of an open-end investment company, as defined in the Investment Company Act of 1940, shall be effective until two (2) months after the end of the issuer's fiscal year. After the initial registration, the issuer or its agent may renew the registration by submitting the appropriate registration forms and renewal fees within two (2) months after the end of the issuer's fiscal year.

b. The registration of securities of a unit investment trust, as defined in the Investment Company Act of 1940, shall be effective until one (1) year from the date of effectiveness granted by the federal Securities and Exchange Commission.

c. Any other registration of securities shall be effective for a period of one (1) year from the date the registration is declared effective by the Commissioner.

(4) Registrations of securities under subdivision (3) may be renewed for additional periods of one (1) year if the appropriate registration forms and renewal fees are received prior to the expiration date. The same standards of fairness, justice and equity as prescribed by this subsection for original approval will apply to the renewal of all registrations.

D. If the fiscal year of the issuer terminated on a date more than 90 days prior to the date of the filing, then the financial statements required in Subsections A and B of this Section 7, which must be as of a date not more than 90 days prior to the date of filing, need not be certified by an independent certified public or independent public accountant if there are filed in addition thereto financial statements containing the information required by the

applicable subdivision which are certified by an independent certified public or independent public accountant as of the end of the preceding fiscal year of the issuer.

### Sec. 8. Consent to Service.

Unless the Board by rule otherwise specifies, any application filed or notice filing submitted by an issuer, or by a dealer or investment adviser who is organized under the laws of any other state, territory, or government, or domiciled in any other state than Texas, shall contain a provision that appoints the Commissioner the issuer's, dealer's, or investment adviser's true and lawful attorney upon whom all process may be served in any action or proceedings against such issuer, dealer, or investment adviser arising out of any transaction subject to this Act with the same effect as if such issuer, dealer, or investment adviser were organized or created under the laws of this state and had been lawfully served with process therein. The provision shall be duly executed by an authorized agent of the issuer, dealer, or investment adviser. Whenever the Commissioner shall have been served with any process as is herein provided, it shall be the duty of the Commissioner to forward same by United States mail to the last known address of such issuer, dealer, or investment adviser.

### Sec. 9. Protection to Purchasers of Securities.

A. In the event any company, as defined herein, shall sell, or offer for sale, any securities, as defined in this Act, the Commissioner, if he deems it necessary to protect the interests of prospective purchasers of such securities, may require the company so offering such securities for sale to deposit all, or any part, of the proposed securities, or all, or any part, of the moneys and funds received from the sale thereof, except such amounts thereof as the Commissioner deems necessary to be used, and not to exceed the amount allowed as expenses and commissions for the sale of such securities, to be deposited in a trust account in some bank or trust company approved by the Commissioner and doing business in the State of Texas, until such time as such proposed company or existing company shall have sold a specified monetary amount or number of shares of such securities as in his opinion will reasonably assure protection of the public. When the

Commissioner makes a written finding that the
terms of the escrow agreement have been fully
met, the bank or trust company shall transfer
such funds to the proposed or existing
corporation and its executive officers for the
purpose of permitting it to use such securities
or money in its business. In the event such
proposed or existing company shall fail within
two (2) years to sell the minimum amount of
capital necessary under the escrow agreement,
the Commissioner may authorize, and the bank
or trust company shall return to the
subscribers, upon receipt of such authority
from the Commissioner, that portion of the
funds which were deposited or escrowed under
such escrow agreement; provided, however,
that any securities held by such bank or trust
company under the escrow agreement shall be
returned to the corporation only after the bank
or trust company has received evidence of
cancellation thereof from the issuer. At the
time of making the deposits, as herein provided
for, the dealer or issuer shall furnish to such
bank or trust company, and to the
Commissioner, the names of the persons
purchasing or subscribing for such securities,
and the amount of money paid in by each.

B. The total expenses for marketing securities,
including all commissions for the sale of such
securities, and all other incidental selling
expenses, shall not in the aggregate exceed
twenty per cent (20%) of the price at which the
stock or other securities of any proposed or
existing company are to be sold, or offered for
sale, to the public of this State; and this
amount may be limited by the Commissioner to
a less percentage which is in his opinion fair,
just and equitable under the facts of the
particular case.

C. In connection with any permit to sell
securities the Commissioner shall require all
offers for sale of said securities to be made
through and by prospectus which fairly
discloses the material facts about the plan of
finance and business. Said prospectus shall be
filed with and approved by the Commissioner;
provided, however, if the applicant files a
prospectus or offering circular with the
Commissioner which is also filed with the
S.E.C. under the Securities Act of 1933, as
amended, or the regulations thereunder, this
subsection shall in all respects be satisfied.
Failure to comply with this requirement shall be
treated as a violation of this Act, subjecting the
parties responsible to the consequences thereof

as provided herein.

## Sec. 10. Examination of Application; Permit.

### A. Commissioner to Examine Application; Grant or Deny.

Upon the filing of an application for qualifying securities under Section 7A, it shall be the duty of the Commissioner to examine the same and the papers and documents filed therewith. If he finds that the proposed plan of business of the applicant appears to be fair, just and equitable, and also that any consideration paid, or to be paid, for such securities by promoters is fair, just and equitable when such consideration for such securities is less than the proposed offering price to the public, and that the securities which it proposes to issue and the methods to be used by it in issuing and disposing of the same are not such as will work a fraud upon the purchaser thereof, the Commissioner shall issue to the applicant a permit authorizing it to issue and dispose of such securities. Should the Commissioner find that the proposed plan of business of the applicant appears to be unfair, unjust or inequitable, he shall deny the application for a permit and notify the applicant in writing of his decision.

### B. Permit, Form and Contents; Term and Renewals.

Every permit qualifying securities shall be in such form as the Commissioner may prescribe, and shall recite in bold type that the issuance thereof is permissive only, and does not constitute a recommendation or endorsement of the securities permitted to be issued. Such permit shall be for a period of one (1) year; provided, however, that if the securities authorized to be sold are not sold within the term provided by the permit, a renewal application may be filed with the Commissioner. Such renewal application shall recite the total number of shares sold in Texas, the total number of shares sold elsewhere, total number of shares outstanding, and shall contain a detailed balance sheet, an operating statement, and such other information as the Commissioner may require. The Commissioner shall examine applications for renewal by the same standards as stated in subsection A of this section for original applications and upon that basis issue or deny renewal permits; such permits, if issued, shall be for a period of one (1) year and be in such form as the

Commissioner may prescribe. The Commissioner shall charge such fees for the issuance of permits to sell securities as are hereinafter provided. No permit instrument need be issued if securities are registered under Sections 7B or C of this Act, but the Commissioner will examine the registration papers to determine their sufficiency under the requirements there stated.

### C. Use of Permit to Aid Sale of Securities Prohibited.

It shall be unlawful for any dealer, issuer, or agent to use a permit authorizing the issuance of securities in connection with any sale or effort to sell any security.

### D. Commissioner's Discretion.

In applying the standards of this Act, the Commissioner may waive or relax any restriction or requirement in the Board's rules that, in his opinion, is unnecessary for the protection of investors in a particular case.

### Sec. 10-1. Purposes.

A. This Act may be construed and implemented to effectuate its general purpose to maximize coordination with federal and other states' law and administration, particularly with respect to:

(1) procedure, reports, and forms; and

(2) exemptions.

B. This Act may be construed and implemented to effectuate its general purposes to protect investors and consistent with that purpose, to encourage capital formation, job formation, and free and competitive securities markets and to minimize regulatory burdens on issuers and persons subject to this Act, especially small businesses.

### Sec. 11. Papers Filed with Commissioner; Records Open to Inspection.

All information, papers, documents, instruments and affidavits required by this Act to be filed with the Commissioner shall be deemed public records of this state, and shall be open to the inspection and examination of any purchaser or prospective purchaser of said securities or the agent or representative of such purchaser or prospective purchaser; and the Commissioner shall give out to any such purchaser or prospective purchaser or his agent or representative any information required to be filed with him under the provisions of this section, or any other part of this Act, and shall

furnish any such purchaser, prospective purchaser, or his agent or representative requesting it, certified copies of any and all papers, documents, instruments and affidavits filed with him under the provisions of this section or of any part of this Act. The Commissioner shall maintain a record, which shall be open for public inspection, upon which shall be entered the names and addresses of all registered dealers, registered agents, registered investment advisers, registered investment adviser representatives, and persons who have submitted a notice filing under this Act, and all orders of the Commissioner denying, suspending or revoking registration. This section does not affect information considered confidential by Section 13-1 or 28 of this Act or other law.

### Sec. 12. Registration of Persons Selling Securities or Rendering Investment Advice.

A. Except as provided in Section 5 of this Act, no person, firm, corporation or dealer shall, directly or through agents, offer for sale, sell or make a sale of any securities in this state without first being registered as in this Act provided. No agent shall, in behalf of any dealer, sell, offer for sale, or make sale of any securities within the state unless registered as an agent for that particular registered dealer under the provisions of this Act.

B. Except as provided by Section 5 of this Act, a person may not, directly or through an investment adviser representative, render services as an investment adviser in this state unless the person is registered under this Act, submits a notice filing as provided by Section 12-1 of this Act, or is otherwise exempt under this Act. A person may not act or render services as an investment adviser representative for a certain investment adviser in this state unless the person is registered or submits a notice filing as an investment adviser representative for that particular investment adviser as provided in Section 18 or 12-1 of this Act.

C. The Board may adopt rules and regulations exempting certain classes of persons from the dealer, agent, investment adviser, and investment adviser representative registration requirements, or providing conditional exemptions from registration, if the Board determines that such rules and regulations are consistent with the purposes of this Act.