UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-29-10

                 Plaintiff,

      -against-

STEPHEN J. CZARNIK,
                 Defendant.
------------------------------------------------------------x

10 Civ. 745 (PKC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

        The Securities and Exchange Commission (the "Commission") brings this action against Stephen Czarnik, who, at all times relevant to the Complaint, was a partner at the New York-based law firm of Cohen & Czarnik, LLP.  The Complaint alleges that the defendant made false representations in violation of sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 and section 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934.

        In essence, the Commission alleges that three penny stock issuers sold unregistered shares to a single group of promoters who then pumped up the price of the stock and dumped their shares into the public market at inflated prices in a short period of time.  As to the only defendant in the present case, the Commission alleges that Czarnik, with knowledge or reckless disregard of the scheme to defraud, drafted and provided legal documents, including opinion letters, to the transfer agents to induce the transfer agents to issue unregistered shares to the promoters.  The sales of the unregistered shares – sales which are not accompanied by the filing of a registration statement with appropriate public disclosure – were accomplished by persuading the issuers' transfer agents that the sales to the promoters were in compliance with Rule 504, meaning, among other things, that they

were sales to accredited investors and that they had not been acquired with a view to reselling.  It is alleged that these non-party promoters had every intention to resell the acquired shares to the public and that attorney Czarnik knew, or should have known, of this when he prepared documents making representations to the transfer agents.

On Czarnik's motion to dismiss, this Court concludes that the Commission has failed to adequately and plausibly allege that Czarnik acted with knowledge of falsity or reckless disregard of the truth in making representations on July 1, 2007, July 16, 2007 and August 16, 2007.  The Court also concludes that the allegations as to statements made on December 3, 2007, December 17, 2007, December 18, 2007 and January 7, 2008 are adequate to state a claim for relief under section 17(a) of the Securities Act and section 10(b) and Rule 10b-5 of the Securities and Exchange Act. Additionally, the Court finds that the Commission has adequately stated a claim for relief under sections 5(a) and 5(c) of the Securities Act.

BACKGROUND

On February 1, 2010, the Commission filed a complaint against Czarnik.  (Docket # 1.)  Czarnik, a partner at the law firm of Cohen & Czarnik, LLP, represented three penny stock companies, My Vintage Baby, Inc. ("MVBY"), Alchemy Creative, Inc. ("Alchemy") and Beverage Creations, Inc. ("BCI") (collectively, the "Issuers"), in connection with offerings undertaken between June 2007 and January 2008.  (Am. Compl. ¶ 11, 14.)  The Complaint alleges that through Czarnik's efforts, three stock promoters, Ryan Reynolds, Jason Wynn and Carlton Fleming (collectively, the "Promoters"), procured unrestricted stock certificates from the Issuers' transfer agents and then immediately engaged in an illegal distribution of the shares into the public market making approximately $20 million in profits.  (Id. ¶¶ 3, 16.)  The Commission asserts that Czarnik facilitated the Promoters' violation of Rule 504, adopted as part of Regulation D, 17 C.F.R. §

230.501 et seq. (1999), which exempts certain limited offerings and sales of securities if, among other things, the sales do not exceed $1,000,000 and are made only to accredited investors. (Id. ¶¶ 1, 3.) Specifically, the Commission alleges that Czarnik facilitated the Promoters' actions by "churn[ing] out bogus opinion letters predicated on the Promoters' alleged representations to him that they are buy-and-hold investors." (Id. ¶ 4.)

The Complaint alleges that on seven occasions – June 1, 2007, July 16, 2007, August 16, 2007, December 3, 2007, December 17, 2007, December 18, 2007 and January 7, 2008 – Czarnik provided documents to the transfer agents of either MVBY, Alchemy or BCI that he knew, or was reckless in not knowing, included representations that were false. (Id. ¶¶ 23, 30, 32, 56-61, 63, 78-84, 86.) The representations are contained within three documents drafted by Czarnik for each Issuer:  a Management Representation Letter, a Subscription Agreement and an Opinion Letter.

First, each Issuer's Management Representation Letter, drafted by Czarnik, requested Czarnik to provide a written opinion as to the legality of the issuance of unregistered stock. The Commission alleges that Czarnik included the following representations in the Management Representation Letters that he knew, or was reckless in not knowing, were false: "[The Promoters and Issuer] will not use the shares in a distribution or violate any federal or state securities laws. [The Promoter] has not offered or sold any portion of the shares to others or with a view to reselling or otherwise disposing of any portion of the Shares." (Id. ¶¶ 25, 56, 79.) Second, in Subscription Agreements drafted by Czarnik and entered into by each Issuer and the Promoters, Czarnik included the following representation or promise that the Complaint alleges he knew, or was reckless in not knowing, was false: "[Each Promoter] will not engage in any activity that will constitute a distribution of the Shares, . . . [and] has not offered or sold any portion of the Shares to others or with a view to reselling or otherwise disposing of any portion of the Shares." (Id. ¶¶ 26, 57, 80.)

3

Finally, Czarnik drafted Opinion Letters repeating the representations included in the Management

Representation Letters that "[The Promoters and Issuer] will not use the shares in a distribution or

violate any federal or state securities laws" and opining that the "certificates representing the

Common Stock are to be issued without legend." (Id. ¶¶ 27-28, 58-59, 81-82.) The Opinion Letters

recited that Czarnik had made no "independent investigation" of the representations. (Id. ¶¶ 27, 58,

81.) The Commission alleges that, despite this assertion, Czarnik knew or was reckless in not

knowing these representations were false.

DISCUSSION

I.        Rule 12(b)(6) and Rule 9(b) Pleading Standards

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)). "'Labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do,'" rather, a plaintiff must plead "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting

Twombly, 550 U.S. at 555). In considering a Rule 12(b)(6) motion to dismiss, all non-conclusory

factual allegations are accepted as true, see id. at 1949-50, and all reasonable inferences are drawn in

favor of the plaintiffs. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per

curium).

In analyzing a motion to dismiss a complaint pursuant to Rule 12(b)(6), consideration

is generally limited to the factual allegations in the complaint. Rule 12(d), Fed. R. Civ. P. A court,

however, may also consider documents incorporated by reference or attached to the complaint as

exhibits, documents the plaintiff knew of or possessed and relied upon in framing the complaint and

4

items of which judicial notice may be taken. See Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). With respect to the latter, the court may take judicial notice of "public records and of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." Munno v. Town of Orangetown, 391 F.Supp.2d 263, 268-69 (S.D.N.Y. 2005) (internal quotation marks omitted) (taking judicial notice of affidavits and pleadings submitted by plaintiff and letters written by plaintiff's counsel in a prior state court action that allegedly contradicted plaintiff's allegations in the present matter). To the extent that such documents bear on the issues in this action – and not for the truth of their content – the court takes judicial notice of the pleadings filed by the Commission against the Promoters in S.E.C. v. Reynolds, 3:08 Civ. 0438-G (N.D. Tex.) (filed Mar. 13, 2008) and S.E.C. v. Feeback, 3:10 Civ. 00104-K (N.D. Tex.) (filed Jan. 20, 2010).

In addition to the pleading requirements of Rule 12(b)(6), a complaint alleging securities fraud must satisfy the heightened pleading requirements of Rule 9(b), Fed. R. Civ. P.[1] Rule 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud." Requiring particularity serves to give a defendant notice of the plaintiff's claim and safeguards a defendant's reputation from "improvident" charges. See ATSI Comm., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). To satisfy this pleading threshold, the complaint must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

---

[1] The heightened pleading requirements set forth in the Private Securities Litigation Reform Act ("PSLRA") do not apply to actions filed by the Commission. 15 U.S.C. § 78u-4(a)(1) ("The provisions of this subsection shall apply in each private action arising under this chapter."); see In re Reserve Fund Sec. & Derivative Litig., 09 Md. 2011 (PGG) 09 Civ. 4346 (PGG) – F.Supp.2d –, 2010 WL 685013, *6 (S.D.N.Y. Feb. 24, 2010) (finding that the terms of the PSLRA do not apply to fraud actions filed by the Commission).

II.        Commission's Claims Pursuant to Section 10(b), Rule 10b-5 and Section 17(a)

In order to state a claim under section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and

Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, the SEC must plead that the defendant

"(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or

used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities."

S.E.C v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir.1999).

The same elements required to establish a section 10(b) and a Rule 10b-5 violation

suffice to establish a violation under sections 17(a)(1) – (3), with the exception that scienter is not

required for the Commission to enjoin violations under subsections (a)(2) or (a)(3).  See Id.[2]

Moreover, contrary to the defendant's argument that section 17(a) requires that the defendant be an

actual seller or offeror of securities for liability to attach, section 17(a) establishes broad anti-fraud

prohibitions that are not limited to actual sellers of securities and can apply to persons "who neither

passed title nor solicited offers on behalf of securities issuers or sellers."  S.E.C. v. Badian, 06 Civ.

2621 (LTS) (DFE), 2008 WL 3914872, *6 (S.D.N.Y. Aug. 22, 2008) (rejecting defendants'

argument that section 17(a), similar to section 12 of the Securities and Exchange Act of 1934,

incorporates a "statutory seller" requirement).  First, the statutory language of section 17(a), which

bars "any person in the offer of sale of any securities . . . directly or indirectly . . . to employ any

device, scheme or artifice to defraud . . . ."  15 U.S.C. § 77q(a)(1), is broad and does not impose a

---

[2] Section 17(a) provides in relevant part:
> It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly (1) to employ any device, scheme, or artifice to defraud; (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

15 U.S.C. § 77q(a).

requirement that the defendant be an actual seller of securities.  Moreover, there is nothing in the

Supreme Court's opinion in Aaron v. S.E.C., relied upon by defendant, that construes section 17(a)

as applying only to those sellers who had actual contact with buyers.  In Aaron, the Court notes that

"Section 17(a) . . . applies only to sellers."  446 U.S. 680, 687 (1980).  This phrase, however, placed

in the context of the entire opinion, appears to have been intended to draw a distinction between

Section 17(a)'s applicability to "sellers" and Section 10(b)'s applicability to "both buyers and

sellers," and not as a limitation on the reach of section 17(a).  See id.;  see also S.E.C. v. Wolfson,

539 F.3d 1249, 1263-64, 1264 n.20 (10th Cir. 2008) ("The [Aaron] opinion, however, does nothing

to strictly limit § 17(a) liability *only* to the literal buyers and sellers of securities.") (emphasis in

original); S.E.C. v. Holschuh, 694 F.2d 130, 142 (7th Cir. 1982) ("[A]ctual first-hand contact with

offerees or buyers [is not] a condition precedent to primarily liability for antifraud violations.").

A.        The Nexus Requirement

The alleged misrepresentations made by Czarnik were contained in documents

disseminated only to the Issuers' transfer agents and were not made directly available to the

investing public.  (Am. Compl. ¶¶ 30, 61, 84.)  The fact that Czarnik's statements were not

disseminated directly to investors does not foreclose liability under section 10(b), Rule 10b-5 and

section 17(a).  In United States v. Naftalin, where defendant was convicted under section 17(a)(1)

for fraudulent short sales placed with brokers resulting in injury to the brokers but not to investors

directly, the Supreme Court held that the fraud need not have been perpetrated on an actual or

potential investor to constitute a violation of section 17(a)(1). 441 U.S. 768, 773 (1979).  Beginning

with the text of the statute, the Court held that "the statutory language does not require that the

victim of the fraud be an investor-only that the fraud occur 'in' an offer or sale." Id. at 772.

Specifically, the Court held that the statutory phrase, "in the offer or sale of any securities," was

intended to be "define[d] broadly" and is "expansive enough to encompass the entire selling process, including the seller/agent transaction." Id. at 773. "The language does not require that the fraud occur in any particular phase of the selling transaction. . . . Thus, nothing in subsection (1) or § 17(a) creates a requirement that injury occur to a purchaser." Id.

Additionally, focusing on the statutory purpose, the Court highlighted that "neither this Court nor Congress has ever suggested that investor protection was the *sole* purpose of the Securities Act." Id. at 775. "Prevention of frauds against investors was surely a key part of that program, but so was the effort to achieve a high standard of business ethics . . . *in every facet of the securities industry*." Id. (internal quotation marks omitted) (emphasis in original). Specifically, the Court emphasized that "the welfare of investors and financial intermediaries are inextricably linked – frauds perpetrated upon either business or investors can redound to the detriment of the other and to the economy as a whole." Id. at 776.

Similarly, the fraud need not have been perpetrated on an actual or potential investor to constitute a violation of section 10(b) and Rule 10b-5. Even though the Court in Naftalin addressed section 17(a)(1), the statutory language there – "in the offer or sale of any securities" – is virtually identical to the language in section 10(b) of the Securities Exchange Act – "in connection with the purchase or sale of any security." Compare 15 U.S.C. § 77q(a)(1) with 15 U.S.C. § 78j(b). In Naftalin, the Court noted that the terms "in" and "in connection with" have on occasion been used interchangeably. 441 U.S. at 773 n.4. Moreover, the broader language of section 10(b) cannot be read to require that the fraud occur in any particular phases of the selling transaction. See Graham v. S.E.C., 222 F.3d 994, 1002-03 (D.C. Cir. 2000) (holding that the Supreme Court's unanimous decision in Naftalin forecloses petitioner's argument that to constitute a violation of section 10(b) the fraud must have been perpetrated upon an actual or potential investor); see also A.T. Brod & Co. v.

8

Perlow, 375 F.2d 393, 396 (2d Cir. 1967) ("Neither § 10(b) nor Rule 10b-5, it appears, speaks in terms of limiting the nature of the violation to one involving fraud of 'investors'; nor is there any justification for reading such an additional requirement into the Act.  These rules and regulations were . . . designed to protect both investors and 'the public interest.'").

Moreover, the Supreme Court has "espoused a broad interpretation" of the phrase "in connection with" in the context of section 10(b) and Rule 10b-5.  Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006).  "Under our precedents, it is enough that the fraud alleged 'coincide' with a securities transaction – whether by the plaintiff or by someone else."  Id. (citing United States v. O'Hagan, 521 U.S. 642, 651, 659 (1997) ("[Section 10b] requires deception 'in connection with the purchase or sale of any security,' not deception of an identifiable purchaser or seller.") and S.E.C. v. Zandford, 535 U.S. 813, 819-20, 822 (2002) ("[Section 10b and Rule 10b-5] should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes.") (internal quotation marks omitted)).

B.      Materiality

"At the pleading stage, a plaintiff satisfies the materiality requirement of Rule 10b-5 by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions."  Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000) (citing Basic Inc. v. Levinson, 485 U.S. 224, 231 (1988) (adopting the standard in TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976), for section 10(b) and Rule 10b-5 actions)).  Whether an alleged misrepresentation or omission is material depends on all the relevant circumstances of the case.  Id.

Materiality is a "mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts."  TSC Indus. v. Northway, Inc., 426 U.S. 438, 450

9

(1976). On a Rule 12(b)(6) motion to dismiss, "'a complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" Ganino, 228 F.3d at 162 (alteration in original) (quoting Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985).

The defendant argues that the alleged misstatements are not material to a reasonable investor because they were contained in documents maintained exclusively in the files of the Issuers' transfer agents and were not disseminated to the public. The fact that the alleged misrepresentations were made to the transfer agent rather than to the public, however, does not foreclose their being material. See Naftalin, 441 U.S. at 776 ("The welfare of investors and financial intermediaries are inextricably linked – frauds perpetrated upon either business or investors can redound to the detriment of the other and to the economy as a whole.").

A misstatement made in any phase of the selling transaction can be material if a reasonable investor would have considered the defendant's alleged misrepresentations important, even if the statement is not made directly to the investor. Investor reliance is not a necessary predicate for a finding of materiality.[3] Here, reasonable minds could differ on the question of whether the defendant's misrepresentations to the Issuers' transfer agents were important to a reasonable investor. Undoubtedly, a reasonable investor could consider Czarnik's statements regarding the validity of issuing unrestricted shares to be important information. A transfer agent seeks to have an attorney submit an opinion letter as to the legality of issuing unrestricted stock and other supporting documents to legitimize the agent's issuance of the unrestricted stock. Insofar as the attorney's opinion letter and other documents necessarily inform the transfer agent's decision,

---

[3] Additionally, unlike a private plaintiff, the Commission does not need to plead or prove reliance. See S.E.C. v. Credit Bancorp, Ltd., 195 F.Supp. 2d 475, 490-91 (S.D.N.Y. 2002).

misrepresentations in such documents may be considered important by the reasonable investor.

C.    Scienter

As set forth above, in order to state a claim under section 10(b), Rule 10b-5 and section 17(a)(1), a complaint must allege that the defendant acted with scienter.  To adequately plead scienter in the context of securities fraud, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent." Novak, 216 F.3d at 306 (quoting Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995).  A "strong inference" of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Novak, 216 F.3d at 307 (internal quotation marks omitted).[4]  Here, the Commission asserts that they have adequately pled scienter by alleging facts that constitute strong circumstantial evidence of defendant's conscious or reckless misconduct.  (Pl. Opp'n. to Def. Mot. to Dismiss 4.)

Reckless conduct is "'at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" Novak, 216 F.3d at 308 (ellipsis in original) (quoting Rolf v. Blyth, Eastman Dillon & Co., Inc., 570 F.2d 38, 47 (2d Cir. 1978) (internal quotation marks omitted)).  The Second Circuit in Novak provided

---

[4] The Second Circuit's "strong inference" standard predated the adoption of the PSLRA and, indeed, has been incorporated into the PSLRA. 15 U.S.C. § 78u-4(b)(2) (requiring plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."); see Novak, 216 F.3d at 311 ("[W]e hold that the PSLRA adopted our 'strong inference' standard . . . .").  There is nothing to suggest, however, that the "strong inference" standard as used in the PSLRA governs actions brought by the Commission. See In re Reserve Fund Sec., 2010 WL 685013 at *6 (finding that the terms of the PSLRA do not apply to fraud actions filed by the Commission).  The Supreme Court in Tellabs, Inc. v. Makor Issues & Rights, Ltd., clarified that the "strong inference" required under the PSLRA exists only where "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." 551 U.S. 308, 310 (2007).  Although the Second Circuit has not directly addressed the issue, courts in this Circuit have declined to extend the Supreme Court's interpretation of the PSLRA's "strong inference" standard to Commission enforcement actions. See e.g., In re Reserve Fund Sec., 2010 WL 685013 at *6; S.E.C. v. Pentagon Capital Mgmt. PLC, 612 F.Supp.2d 241, 263-64 (S.D.N.Y. 2009); S.E.C. v. Dunn, 587 F.Supp.2d 486, 501 (S.D.N.Y. 2008).  Similarly, this Court adopts this approach.

the following guidance as to the types of facts sufficing to state a claim based on recklessness: "[T]ypically [complaints] have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements." 216 F.3d at 308.   Moreover, allegations of recklessness have been found to be sufficient where "plaintiffs alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud.  Id.  "'An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness.'"  Id. (ellipsis in original) (quoting Chill v. Gen. Elec. Co., 101 F.3d 263, 269 (2d Cir. 1996)).

Novak also identified several important limitations on the scope of allegations sufficient to state a claim based on recklessness.  First, allegations of "fraud by hindsight" are not sufficient.  Id. at 309.  ("[Defendants] need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them."); see Denny v. Barber, 576 F.2d 465, 470 (2d Cir. 1978).  Second, "conclusory allegations – that Defendants 'knew but concealed' some things, or 'knew or were reckless in knowing' other things – do not satisfy the requirements of Rule 9(b). . . . [S]uch allegations are 'so broad and conclusory as to be meaningless.'"  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994) (quoting Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 120 (2d Cir. 1982)).  "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."  Novak, 216 F.3d at 309.

1.      Allegations of Scienter in Connection with MVBY Offerings

The Complaint alleges that on five occasions – June 1, 2007, July 16, 2007, August 16, 2007, December 18, 2007 and January 7, 2008 – Czarnik made representations in documents

provided to MVBY's transfer agent that he knew, or was reckless in not knowing, were false. (Am. Compl. ¶¶ 23, 30, 32.) Specifically, the Commission alleges that the defendant had knowledge, or was reckless in not knowing, the following representations were false. First, in a letter from MVBY, drafted by Czarnik, Czarnik was asked to issue a written opinion related to the issuance of unregistered stock (the "MVBY Management Representation Letters"). The letter included the following representations: "[The Promoters and MVBY] will not use the shares in a distribution or violate any federal or state securities laws. [The Promoter] has not offered or sold any portion of the shares to others or with a view to reselling or otherwise disposing of any portion of the Shares." (Id. ¶ 25.) Second, Czarnik included the following representation in a subscription agreement he drafted entered into by MVBY and the Promoters ("MVBY Subscription Agreements"): "[The Promoter] will not engage in any activity that will constitute a distribution of the Shares, . . . [and] has not offered or sold any portion of the Shares to others or with a view to reselling or otherwise disposing of any portion of the Shares." (Id. ¶ 26.) Finally, Czarnik drafted a legal opinion letter ("MVBY Legal Opinions") repeating, without "independent investigation," the representation included in the MVBY Management Representation Letter that "[The Promoters and MVBY] will not use the shares in a distribution or violate any federal or state securities laws" and opining that the "certificates representing the Common stock are to be issued without legend." (Id. ¶¶ 27-28.)

The Complaint does not contain any allegations as to when or how the defendant became aware of the alleged falsity of the representations made on June 1, 2007, July 16, 2007, and August 16, 2007. The Commission alleges three facts in the Complaint that take place prior to August 16, 2007, none of which, either alone or in their totality, are sufficient to establish Czarnik's knowledge of the alleged falsity of the representations before he communicated with MVBY's transfer agent on the above dates. The Complaint alleges that (1) prior to June 1, 2007 Czarnik

represented MVBY in its purchase of and merger with a dormant public shell company, counseled MVBY in obtaining a NASDAQ ticker symbol, and helped draft rudimentary financial disclosures sufficient for MBVY to be quoted on Pink Sheets, an online stock exchange (Id. ¶¶ 22, 33), (2) on June 1, 2007, MVBY issued a press release announcing that MVBY had "formalized all necessary documentation . . . to initiate trading" (Id. ¶ 34), and (3) between June and July 2007, MVBY was touted by a penny stock promotion website.  (Id. ¶ 35.)

As to the first fact, the Commission fails to identify any facts in the course of the representation that would place a reasonable person on notice of the Promoters likely intention to violate Rule 504.  As to the latter two facts, the Complaint does not allege the defendant himself knew of the press release or the promotion on the website or that any statements in the release or on the website were attributed to or adopted by him.  Taken together, the allegations fail to satisfy the SEC's burden of adequately pleading scienter.  The group pleading doctrine, under which the plaintiff can "circumvent the general pleading rule that fraudulent statements must be linked directly to the party accused of the fraudulent intent," applies only to those individuals with "direct involvement in the everyday business of the company."  See In re Refco, Inc. Sec. Litig., 503 F.Supp.2d 611, 641 (S.D.N.Y. 2007) (internal quotation marks omitted).  The Complaint does not allege facts suggesting Czarnik has direct involvement in the everyday business of MVBY.  Moreover, even though the "bright line standard," which forecloses liability under section 10(b) for a false statement unless the statement is attributed to that person at the time of its dissemination to the public, does not necessarily apply to actions brought by the Commission, the Commission is nonetheless required to allege that "the defendant was sufficiently responsible for the statement – in effect, caused the statement to be made – and knew or had reason to know that the statement would be disseminated to investor."  S.E.C. v. Collins & Aikman Corp., 524 F.Supp.2d 477, 489-90

14

(S.D.N.Y. 2007).  The Complaint contains no allegations that Czarnik caused the press release or statements on the website to be made.

Accordingly, the Complaint does not contain any allegation of knowledge or recklessness and therefore cannot satisfy the scienter requirement as to the representations made by Czarnik on June 1, 2007, July 16, 2007 and August 16, 2007.  As such, the defendant's motion to dismiss the claim for securities fraud under section 10(b), Rule 10b-5 and section 17(a)(1) for representations made by Czarnik on June 1, 2007, July 16, 2007 and August 16, 2007 is granted.

Conversely, the Complaint contains sufficient allegations as to when or how the defendant knew or should have known of the alleged falsity of the representations made on December 18, 2007 and January 7, 2008.  The Complaint alleges that on August 28, 2007, Czarnik participated in a phone interview with FINRA on behalf of MVBY as part of a review of MVBY's unregistered stock offerings to the Promoters and MVBY's recent press releases.  (Am. Compl. ¶¶ 37-38.)  Additionally, the Complaint alleges that on September 13, 2007 Czarnik learned that Pink Sheets, an online exchange, had received numerous complaints about spam promoting MVBY's securities and had halted its quotations of MVBY stock.  (Id. ¶ 39.)  Moreover, on October 10, 2007 Czarnik was notified that Pink Sheets placed a "skull and crossbones" designation on MVBY stock, a designation indicting that the stock is "the subject of unsolicited spam, questionable promotion, regulatory suspensions, disruptive corporate actions (including reverse mergers), or other public-interest concerns."  (Id. ¶ 41.)  The Complaint also alleges that on October 25, 2007 Czarnik exchanged emails with MVBY's chief executive officer addressing the CEO's concerns regarding "very upset shareholders" and accusations of criminal conduct.  (Id. ¶ 42-43.)  Finally, Czarnik is held to the knowledge – discussed below – gained by him in his simultaneous representations of Issuers Alchemy and BCI in their offerings to the Promoters.

15

A reasonable fact finder could conclude that these facts should have alerted Czarnik to the likelihood of the falsity of misrepresentations by MVBY and the Promoters in connection with the issuance of unregistered securities.  Czarnik cannot "escape liability for fraud by closing his eyes to what he saw and could readily understand." S.E.C. v. McNulty, 137 F.3d 732, 737 (2d Cir. 1998) (finding the requisite scienter where the defendant included false statements in SEC filings even though the corporate officials upon whom he was relying for information behaved evasively towards him and made suspicious statements to him); S.E.C. v. Ramoil Mgmt. Ltd., 01 Civ. 9057 (SC), 2007 WL 3146943, *9 (S.D.N.Y. Oct. 25, 2007) (finding the requisite scienter where the defendant, a corporate lawyer, included statements in opinion letters in the Forms S-8 filed with the SEC that he should have known were false given what was happening around him at the various corporate entities that he represented but was "egregiously refusing to see the obvious, and was therefore reckless").

Accordingly, the Complaint contains allegations of recklessness and therefore satisfies the scienter requirement as to the representations made by Czarnik on December 18, 2007 and January 7, 2008.  As such, the defendant's motion to dismiss the claim for securities fraud under section 10(b), Rule 10b-5 and section 17(a)(1) for representations made by Czarnik on December 18, 2007 and January 7, 2008 is denied.

2.      Allegations of Scienter in Connection with the Alchemy Offering

The Complaint alleges that on or before December 3, 2007, Czarnik drafted and transmitted to Alchemy's transfer agent on behalf of Alchemy the same three documents referenced above containing the same allegedly false representations to facilitate the issuance of unregistered stock to the same promoters.  (Am. Compl. ¶¶ 54-61.)  In connection with these representations, the Commission sufficiently pleads recklessness and therefore satisfies the scienter requirement.

16

First, Czarnik's simultaneous representation of Issuers MVBY and BCI in their offerings to the Promoters should have alerted him to the fact that the representations by the Promoters disclaiming their intent to publicly distribute Alchemy stock could be false. Additionally, the Complaint alleges that Czarnik received e-mails from Robert Feeback, one of the Promoters, on November 14, 2007 and again on November 30, 2007 discussing the date on which the Promoters would like to begin trading Alchemy stock. On November 14, 2007, Feeback writes to Czarnik, "[Promoter] Carl [Fleming] will set the date to begin trading. You want to go out on a Monday and I will continue to coordinate the initial trading date with Carl and get back to you." (Id. ¶ 66.) On November 30, 2007, Feeback writes to Czarnik, "Stephen . . . Alchemy Creative – should start trading this Monday." (Id. ¶ 67.) The Complaint also alleges that on October 1, 2007 Czarnik received an email from an Alchemy officer stating that Alchemy is "ready to sign and start trading." (Id. ¶ 65.)

"An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness." Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000) (quoting Chill v. Gen. Elec. Co., 101 F.3d 263, 269 (2d Cir. 1996)). From the facts alleged, a reasonable fact finder could conclude that Czarnik was likely ignoring obvious signs of fraud, and was therefore reckless.

Accordingly, the Complaint contains allegations of recklessness and therefore satisfies the scienter requirement as to the representations made by Czarnik on December 3, 2007. As such, the defendant's motion to dismiss the claim for securities fraud under section 10(b), Rule 10b-5 and section 17(a)(1) for representations made by Czarnik on December 3, 2007 is denied.

3.      Allegations of Scienter in Connection with the BCI Offering

The Complaint alleges that on December 17, 2007, on behalf of Beverage Creations,

17

Inc. ("BCI"), Czarnik drafted the same three documents referenced above containing the same allegedly false representations to facilitate the issuance of unregistered stock of BCI to the same promoters. (Am. Compl. ¶¶ 78-83.) On January 30, 2008 Craznik transmitted these documents to BCI's transfer agent who then issued share certificates to the Promoters without a restrictive legend. (Id. ¶84.) In connection with these representations, the Commission sufficiently pleads recklessness and therefore satisfies the scienter requirement.

Having previously counseled both MVBY and Alchemy on its offering to the Promoters, Czarnik should have been aware that the representations by the Promoters disclaiming their intent to publicly distribute BCI stock could be false. Additionally, the Complaint alleges that Czarnik received e-mails from Robert Feeback, one of the Promoters, on October 11, 2007, October 15, 2007, November 29, 2007, December 5, 2007 and January 15, 2008 discussing preparations to facilitate trading of BCI stock. On October 11, 2007, Feeback writes to Czarnik, "We need to get everything prepared to upload on Pink Sheets. The plan is to start trading [BCI] in two weeks . . . make sure our website has all the necessary components to accommodate investor inquiries." (Id. ¶ 88) On October 15, 2007, Feeback writes to Czarnik, "Stephen, FYI, Beverage Creations is ready to post on Pink Sheets once they have their symbol." (Id. ¶ 89.) On November 29, 2007, Feeback writes to Czarnik, "Stephen . . . Can we get Beverage Creations trading quickly[,]" to which Czarnik replies, "As we discussed numerous times, it is in the hands of NASDAQ and I have done everything I can to speed this up." (Id. ¶ 90.) On December 5, 2007, Feeback again writes to Czarnik, "Stephen . . . Carl and I need to have a discussion with the BCI folks on the delays with getting them up and trading." (Id. ¶ 91.) Finally, on January 15, 2008, Czarnik receives an email both from Feeback and from Promoter Fleming. Fleming writes, "Stephen . . . I do agree with Rob's earlier email in your representations about when Beverage Creations would be completed so we

18

could initiate advertising and marketing the company along with providing them additional much needed capital . . . I am going to move forward with some firm this week to ensure these companies become publicly traded." (Id. ¶ 92.) That same day, Feeback writes to Czarnik, "Stephen . . . You need to call [a BCI officer] tomorrow and explain to him as to why they do not have a symbol . . . We told them last June that we would have them trading by August/September." (Id. ¶ 93).

The above alleged facts, in particular the email from Promoter Fleming to Czarnik on January 15, 2008, could lead a reasonable fact finder to conclude that Czarnik either had actual knowledge of intended resale or ignored obvious signs of fraud and was therefore reckless. Czarnik's "conscious avoidance of knowledge" is sufficient to satisfy the scienter requirement. See McNulty, 137 F.3d at 737.

Accordingly, the Complaint contains allegations of recklessness and therefore satisfies the scienter requirement as to the representations made by Czarnik on December 17, 2007. As such, the defendant's motion to dismiss the claim for securities fraud under section 10(b), Rule 10b-5 and section 17(a)(1) for representations made by Czarnik on December 17, 2007 is denied.

III.     Commission's Claims Pursuant to Section 5

Section 5 of the Securities Act requires that all non-exempt securities offered for sale to the public be registered with the Commission prior to the offer or sale of such securities. See 15 U.S.C. § 77e; see also S.E.C v. Cavanagh, 445 F.3d 105, 111 (2d Cir. 2006).[5] To state a

---

[5] Section 5(a) provides:

> Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

15 U.S.C. § 77e.

Section 5(c) provides in relevant part:

claim under section 5, the Commission must show "(1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in connection with the offer or sale." Id. at 111 n.13 (internal quotation marks omitted) (citation omitted). Scienter is not an element of a section 5 violation. See S.E.C. v. Universal Exp., Inc., 475 F.Supp.2d 412, 422 (S.D.N.Y. 2007); SEC v. Softpoint, Inc., 958 F.Supp. 846, 859-60 (S.D.N.Y.1997), aff'd, 159 F.3d 1348 (2d Cir.1998) (citing SEC v. Universal Major Indus., Corp., 546 F.2d 1044, 1047 (2d Cir. 1976)). A defendant may rebut the Commission's prima facie case for a section 5 violation by proving the applicability of an exemption from registration. See Cavanagh, 445 F.3d at 111 n.13 (citation omitted); Universal Exp., 475 F.Supp.2d at 422.

Section 4(1) of the Securities Act provides that the registration requirements of section 5 do not apply to "transactions by any person other than an issuer, underwriter, or dealer." 15 U.S.C. § 77d(1). As such, section 4(1) provides an exemption for transactions, not individuals. Liability for violations of section 5, therefore, can extend beyond issuers, underwriters and dealers, to all necessary participants in the sale of unregistered stock by someone who is an issuer, underwriter or dealer. See Universal Exp. 475 F.Supp.2d at 422 ("Liability for violations of Section 5 extends to those who have 'engaged in steps necessary to the distribution of [unregistered] security issues." (quoting S.E.C. v. Chinese Consol. Benev. Ass'n. Inc., 120 F.2d 738, 741 (2d Cir. 1941) (alteration in original))); see also S.E.C. v. Cavanagh, 1 F.Supp.2d 337, 372 (S.D.N.Y. 1998). "The 'necessary participant test . . .

---

> It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security . . . .

Id.

20

essentially asks whether, but for the defendant's participation, the sale transaction would not have taken place' – in other words, whether the defendants' acts were a 'substantial factor in the sale transactions.'" S.E.C. v. Universal Exp., 475 F.Supp.2d at 422 (alteration in original) (quoting S.E.C. v. Murphy, 626 F.2d 633, 651 (9th Cir. 1980)).

The Commission alleges that Czarnik was a necessary participant and substantial factor in the unregistered offering by virtue of the following conduct:  (1) helping the Issuers complete reverse mergers into formerly publicly traded shells (Am. Compl. ¶¶ 22, 52, 76); (2) working to obtain a NASDAQ ticker symbol for each of the Issuers (Id. ¶¶ 33, 53, 94); (3) drafting and filing rudimentary disclosures for each Issuer with Pink Sheets (Id.); (4) drafting management representation letters (Id. ¶¶ 25, 56, 79); (5) drafting subscription agreements (Id. ¶¶ 26, 57, 80); (6) drafting legal opinion letters (Id. ¶¶ 27, 58, 81); and (7) transferring the above documents to the Issuers' transfer agents (Id. ¶¶ 30, 61, 84).  Here, a reasonable fact finder could conclude that the documents drafted and provided to the Issuers' transfer agents by Czarnik were necessary to and substantial factors in the unregistered offerings.  See S.E.C. v. Ramoil Manag., Ltd., 01 Civ. 9057 (SC), 2007 WL 3146943, *10-11 (S.D.N.Y. Oct. 25, 2007) (finding attorney was a necessary participant where opinion of outside counsel was required by statute to be publicly filed before the company could register new shares as part of an employee benefit program).  While the documents drafted by Czarnik are not required by any rule or statute, the Complaint alleges that "many," transfer agents require opinion of issuer's counsel before issuing stock without a restrictive legend.  (Id. ¶ 2.)  A reasonable fact finder could infer that the transfer agents would not have issued the securities without Czarnik's documents.

Accordingly, the defendant's motion to dismiss the section 5 claims is denied.

21

CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint

(Docket # 19) is GRANTED in part and DENIED in part.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       November 29, 2010

22